***EFILED**
Case Number 2022LA00005
Date: 1/18/2022 12:00 AM
Thomas McRa
Clerk of Circuit Cour
Third Judicial Circuit, Madison County Illinoi

IN THE CIRCUIT COURT
FOR THE THIRD JUDICIAL CIRCUIT
MADISION COUNTY, ILLINOIS

| | |
|---|---|
| ALICE McEWEN, as Special Administrator of the Estate of **AUSTIN McEWEN**, Deceased | 2022LA000055 |
| | No. |
| Plaintiff, | **Plaintiff demands trial by jury** |
| v. | |
| **AMAZON.COM, INC.**, a corporation, **AMAZON.COM, LLC**, a limited liability company, **CONTEGRA CONSTRUCTION COMPANY, LLC**, a limited liability company, and **TRISTAR PROPERTIES, LLC**, a limited liability company | |
| Defendants. | |

## COMPLAINT AT LAW

NOW COMES, Plaintiff, ALICE McEWEN, as Special Administrator of the Estate of AUSTIN McEWEN, deceased, through their attorneys, CLIFFORD LAW OFFICES, P.C., and hereby complains against the following Defendants, AMAZON.COM, INC. ("AMAZON INC."), AMAZON.COM, LLC (AMAZON LLC), CONTEGRA CONSTRUCTION COMPANY, LLC ("CONTEGRA), and TRISTAR PROPERTIES, LLC ("TRISTAR"):

## DEFENDANTS

1. Defendant, AMAZON INC., is a multinational technology company, the world's largest internet company, and the world's largest retailer. Defendant, AMAZON INC., is a Fortune 100 company headquartered in Seattle, WA. Defendant, AMAZON INC., maintains, manages, and

1

**EXHIBIT 1**

controls over 100 "fulfillment centers" in the United States. These "fulfillment centers" create a vast network for Defendant, AMAZON INC., to deliver goods to customers in using these centers to store, ship, and deliver goods. On December 10, 2021 and at all relevant times, Defendant, AMAZON INC., maintained a warehouse or "fulfillment center" known as "STL4" located in Edwardsville, Illinois. In addition, on December 10, 2021 and at all relevant times, Defendant, AMAZON INC., utilized a wide range of independently contracted drivers and delivery carriers known as Delivery Service Partners to drive, haul, and make deliveries for Defendant, AMAZON INC. On December 10, 2021 and at all relevant times, the "fulfillment center" known as "STL4" was operated, maintained, controlled, and managed by employees and/or agents of Defendant, AMAZON INC.

2. Defendant, AMAZON LLC, is a multinational technology company, the world's largest internet company, and the world's largest retailer. Defendant, AMAZON LLC, is a Fortune 100 company headquartered in Seattle, WA. Defendant, AMAZON LLC, maintains, manages, and controls over 100 "fulfillment centers" in the United States. These "fulfillment centers" create a vast network for Defendant, AMAZON LLC, to deliver goods to customers in using these centers to store, ship, and deliver goods. On December 10, 2021 and at all relevant times, Defendant, AMAZON LLC, maintained a warehouse or "fulfillment center" known as "STL4" located in Edwardsville, Illinois. In addition, on December 10, 2021 and at all relevant times, Defendant, AMAZON LLC, utilized a wide range of independently contracted drivers and delivery carriers known as Delivery Service Partners to drive, haul, and make deliveries for Defendant, AMAZON LLC. On December 10, 2021 and at all relevant times, the "fulfillment center" known as "STL4" was operated, maintained, controlled, and managed by employees and/or agents of Defendant, AMAZON LLC.

3. Defendant, CONTEGRA, is headquartered in Edwardsville, Illinois and maintains members that are domiciled in Illinois. Defendant, CONTEGRA, is a construction and development company that builds commercial retail buildings, warehouses, office buildings, and institutions. Defendant, CONTEGRA, built, developed, and/or constructed an Amazon "fulfillment center" known as "STL4" located in Edwardsville, Illinois. Defendant, CONTEGRA, was under contract with Defendants, AMAZON INC., AMAZON LLC, and/or TRISTAR, to build, develop and/or construct the subject warehouse.

4. Defendant, TRISTAR, is headquartered in Missouri. Defendant, TRISTAR, is a developer, redeveloper, and real estate acquirer of industrial real estate. Defendant, TRISTAR, was the developer of an Amazon "fulfillment center" known as "STL4" and located in Edwardsville, Illinois. Defendant, TRISTAR, was under contract with Defendants, AMAZON INC., AMAZON LLC and/or CONTEGRA, to build, develop and/or construct the subject warehouse located in Edwardsville, Illinois.

## COUNTS

### COUNT I: WRONGFUL DEATH: NEGLIGENCE: AMAZON.COM, INC.

1. On December 10, 2021 and at all relevant times, Defendant, AMAZON INC., operated, maintained, managed, and/or controlled a "fulfillment center" known as "STL4" located in Edwardsville, Illinois.

2. On December 10, 2021 and at all relevant times, the "fulfillment center" known as "STL4" did not have a basement shelter or actual shelter even though Defendant, AMAZON INC., knew or should have known that the Edwardsville, Illinois area was an area prone to tornadoes with 11 tornadoes hitting the Edwardsville, Illinois area since 2000.

3. On December 10, 2021 and at all relevant times, the "fulfillment center" known as "STL4" was operated, maintained, managed, and/or controlled by employees and/or agents of Defendant, AMAZON INC.

4. On December 10, 2021 and at all relevant times, decedent, AUSTIN McEWEN, was not an employee of Defendant, AMAZON INC., but instead an employee and/or agent of an independently contracted Delivery Service Partner contracted to drive an "Amazon" commercial vehicle to make deliveries on behalf of Defendant, AMAZON INC.

5. On December 10, 2021 and at all relevant times, Defendant, AMAZON INC., controlled, directed, and/or instructed decedent, AUSTIN McEWEN, which included controlling, directing, and/or instructing decedent, AUSTIN McEWEN, on the operative details of his work, including but not limited to, controlling the deliveries he was to make, controlling the routes he was to take, requiring him to wear a uniform and/or apparel that displayed the name "Amazon" on it, requiring him to follow policies and procedures of Defendant, AMAZON INC., controlling the number of deliveries he was to make during a shift, monitoring and scoring his work performance, requiring him to share his phone data, and having the means to terminate him.

6. On December 10, 2021 at approximately 8:28 p.m. an EF-3 tornado began on the south side of Interstate 270 and moved northeast striking the subject Amazon "fulfillment center" known as "STL4" causing parts of the center's walls to collapse and other multiple structure failures which resulted in numerous injuries and the deaths of six individuals, one being decedent, AUSTIN McEWEN.

7. On and before December 10, 2021, Defendant, AMAZON INC., employed an individual and/or individuals at the subject Amazon "fulfillment center" known as "STL4" that was responsible for monitoring severe weather updates.

8.  On December 10, 2021, Defendant, AMAZON INC., knew or should have known that tornadoes were possible at or near the subject "fulfillment center" as early as 3:44 a.m. on Thursday, December 9, 2021, when the National Weather Service issued the following weather warning: *"There is chance of thunderstorms late Friday afternoon into the night across southeastern and east-central Missouri as well as south-central and southwestern Illinois. A few thunderstorms could become strong to severe in southeastern Missouri and southwestern Illinois late Friday evening into night. The main threat will be strong to damage wind gusts, but a tornado is also possible."*

9.  On December 10, 2021, Defendant, AMAZON INC., again knew or should have known that tornadoes were possible at or near the subject "fulfillment center" when the National Weather Service on December 9, 2021 at 2:58 p.m. reported: *"Scattered severe storms are possible across southeast Missouri and southwest Illinois between 8:00 p.m. Friday night and 3:00 a.m. early Saturday. Any storms that develop will be fast moving. The primary threat with these storms will be damaging winds. A few tornadoes will be possible as well."*

10. On December 10, 2021 at 8:06 p.m., the National Weather Service issued a "take shelter now" tornado warning for the Edwardsville, Illinois area.

11. Despite having numerous warnings from the National Weather Service that the Edwardsville, Illinois area was at-risk of devastating weather and/or tornadoes, Defendant, AMAZON INC., had workers and independently contracted Deliver Service Partners working during a holiday "peak season" until moments before the EF-3 tornado obliterated the subject "fulfillment center" in Edwardsville, Illinois.

5

12. At all times on December 10, 2021, Defendant, AMAZON INC., knew or should have known and foreseen that the subject "fulfillment center" was in an area that could sustain devastating weather and/or a tornado on December 10, 2021.

13. On December 10, 2021 and at all relevant times, Defendant, AMAZON INC., had duties to exercise reasonable care in its operation, management, and/or control of the subject "fulfillment center" and all workers present at the center, including but not limited to, independently contracted DSP contractors including decedent, AUSTIN McEWEN, to prevent them from sustaining injuries and death.

14. Notwithstanding its duties, on December 10, 2021 and all relevant times, Defendant, AMAZON INC., by and through its agents and employees, failed to exercise reasonable care in the following manners:

   a. Failed to evacuate all those present at the subject "fulfillment center" when Defendant knew or should have known that keeping individuals working at the center, including decedent, Austin McEwen, placed them in imminent danger when Defendant when or should have known the area was at-risk of a tornado;

   b. Failed to properly monitor the developing inclement weather at or near Edwardsville, Illinois to timely implement life-saving tornado preparedness and response procedures such as timely evacuating the facility, conducting proper safety meetings, and seeing that all individuals were sheltered;

   c. Failed to operate, maintain and manage a warehouse in an area prone to tornadoes that was equipped with a basement shelter or actual shelter;

   d. Failed to operate, maintain, and manage a warehouse in an area prone to tornadoes that was built to withstand tornado size gusts;

   e. Failed to ensure that all individuals at the subject warehouse were aware of the safest place to shelter despite the "fulfillment center" not having a basement shelter or actual shelter;

   f. Failed to have a proper Emergency Action Plan meeting the requirements of OSHA 29 CFR 1910.38;

g. Failed to properly educate and train individuals at the subject "fulfillment center" on a proper Emergency Action Plan in the event of a tornado or severe weather;

h. Failed to review an Emergency Action Plan with each individual per OSHA 1910.38 (e);

i. Failed to have a proper alarm and/or warning in place at the subject "fulfillment center" per OSHA 1910.38 (d) and 1910.165 to warn those at the subject "fulfillment center" of the approaching tornado;

j. Carelessly required individuals including decedent, Austin McEwen, to continue working up until the moments before the tornado struck when Defendant knew or should have known that a tornado was imminent;

k. Improperly directed individuals including decedent, Austin McEwen, to shelter in a bathroom when Defendant knew or should have known that a bathroom was not a safe or proper area to shelter;

l. Failed to hold safety meetings with individuals including decedent, Austin McEwen, in advance of December 10, 2021 to prepare individuals on the safest course of action to take if a tornado is imminent;

m. Failed to timely inform individuals at the subject "fulfillment center" that a tornado was approaching so those individuals had adequate time to properly shelter and/or evacuate;

n. Were otherwise careless and negligent.

15. As a direct and proximate cause of one or more of the aforementioned careless negligent acts and/or omissions of Defendant, the Plaintiff's decedent, AUSTIN McEWEN, suffered serious injuries that resulted in his death.

16. At the time of decedent's death, AUSTIN McEWEN, left surviving a mother, Alice McEwen, and father, Randy McEwen, who have and will continue to suffer damages of a personal, pecuniary, and non-pecuniary nature, including great loss of society and companionship of decedent, AUSTIN McEWEN.

7

17. Plaintiff, ALICE McEWEN, has been duly appointed Special Administrator of the Estate of AUSTIN McEWEN, deceased, and brings this action pursuant to the Wrongful Death Act of Illinois, 740 ILCS 180/1 et. seq.

WHEREFORE, Plaintiff, ALICE McEWEN, as Special Administrator of the Estate of AUSTIN McEWEN, deceased, prays for judgment against Defendant, AMAZON.COM, INC., in an amount in excess of Fifty-Thousand Dollars ($50,000.00).

## COUNT II: WRONGFUL DEATH: NEGLIGENCE: AMAZON.COM, LLC

1. On December 10, 2021 and at all relevant times, Defendant, AMAZON LLC, operated, maintained, managed, and/or controlled a "fulfillment center" known as "STL4" located in Edwardsville, Illinois.

2. On December 10, 2021 and at all relevant times, the "fulfillment center" known as "STL4" did not have a basement shelter or actual shelter even though Defendant, AMAZON LLC, knew or should have known that the Edwardsville, Illinois area was an area prone to tornadoes with 11 tornadoes hitting the Edwardsville, Illinois area since 2000.

3. On December 10, 2021 and at all relevant times, the "fulfillment center" known as "STL4" was operated, maintained, managed, and/or controlled by employees and/or agents of Defendant, AMAZON LLC.

4. On December 10, 2021 and at all relevant times, decedent, AUSTIN McEWEN, was not an employee of Defendant, AMAZON LLC, but instead an employee and/or agent of an independently contracted Delivery Service Partner contracted to drive an "Amazon" commercial vehicle to make deliveries on behalf of Defendant, AMAZON LLC

5. On December 10, 2021 and at all relevant times, Defendant, AMAZON LLC, controlled, directed, and/or instructed decedent, AUSTIN McEWEN, which included controlling, directing, and/or instructing decedent, AUSTIN McEWEN, on the operative details of his work, including but not limited to, controlling the deliveries he was to make, controlling the routes he was to take, requiring him to wear a uniform and/or apparel that displayed the name "Amazon" on it, requiring him to follow policies and procedures of Defendant, AMAZON LLC, controlling the number of deliveries he was to make during a shift, monitoring and scoring his work performance, requiring him to share his phone data, and having the means to terminate him.

6. On December 10, 2021 at approximately 8:28 p.m. an EF-3 tornado began on the south side of Interstate 270 and moved northeast striking the subject Amazon "fulfillment center" known as "STL4" causing parts of the center's walls to collapse and other multiple structure failures which resulted in numerous injuries and the deaths of six individuals, one being decedent, AUSTIN McEWEN.

7. On and before December 10, 2021, Defendant, AMAZON LLC, employed an individual and/or individuals at the subject Amazon "fulfillment center" known as "STL4" that was responsible for monitoring severe weather updates.

8. On December 10, 2021, Defendant, AMAZON LLC, knew or should have known that tornadoes were possible at or near the subject "fulfillment center" as early as 3:44 a.m. on Thursday, December 9, 2021, when the National Weather Service issued the following weather warning: *"There is chance of thunderstorms late Friday afternoon into the night across southeastern and east-central Missouri as well as south-central and southwestern Illinois. A few thunderstorms could become strong to severe in southeastern Missouri and southwestern Illinois*

9

*late Friday evening into night. The main threat will be strong to damage wind gusts, but a tornado is also possible."*

9. On December 10, 2021, Defendant, AMAZON LLC, again knew or should have known that tornadoes were possible at or near the subject "fulfillment center" when the National Weather Service on December 9, 2021 at 2:58 p.m. reported: *"Scattered severe storms are possible across southeast Missouri and southwest Illinois between 8:00 p.m. Friday night and 3:00 a.m. early Saturday. Any storms that develop will be fast moving. The primary threat with these storms will be damaging winds. A few tornadoes will be possible as well."*

10. On December 10, 2021 at 8:06 p.m., the National Weather Service issued a "take shelter now" tornado warning for the Edwardsville, Illinois area.

11. Despite having numerous warnings from the National Weather Service that the Edwardsville, Illinois area was at-risk of devastating weather and/or tornadoes, Defendant, AMAZON LLC, had workers and independently contracted Deliver Service Partners working during a holiday "peak season" until moments before the EF-3 tornado obliterated the subject "fulfillment center" in Edwardsville, Illinois.

12. At all times on December 10, 2021, Defendant, AMAZON LLC, knew or should have known and foreseen that the subject "fulfillment center" was in an area that could sustain devastating weather and/or a tornado on December 10, 2021.

13. On December 10, 2021 and at all relevant times, Defendant, AMAZON LLC, had duties to exercise reasonable care in its operation, management, and/or control of the subject "fulfillment center" and all workers present at the center, including but not limited to, independently contracted DSP contractors including decedent, AUSTIN McEWEN, to prevent them from sustaining injuries and death.

14. Notwithstanding its duties, on December 10, 2021 and all relevant times, Defendant, AMAZON LLC, by and through its agents and employees, failed to exercise reasonable care in the following manners:

   a. Failed to evacuate all those present at the subject "fulfillment center" when Defendant knew or should have known that keeping individuals working at the center, including decedent, Austin McEwen, placed them in imminent danger when Defendant when or should have known the area was at-risk of a tornado;

   b. Failed to properly monitor the developing inclement weather at or near Edwardsville, Illinois to timely implement life-saving tornado preparedness and response procedures such as timely evacuating the facility, conducting proper safety meetings, and seeing that all individuals were sheltered;

   c. Failed to operate, maintain and manage a warehouse in an area prone to tornadoes that was equipped with a basement shelter or actual shelter;

   d. Failed to operate, maintain, and manage a warehouse in an area prone to tornadoes that was built to withstand tornado size gusts;

   e. Failed to ensure that all individuals at the subject warehouse were aware of the safest place to shelter despite the "fulfillment center" not having a basement shelter or actual shelter;

   f. Failed to have a proper Emergency Action Plan meeting the requirements of OSHA 29 CFR 1910.38;

   g. Failed to properly educate and train individuals at the subject "fulfillment center" on a proper Emergency Action Plan in the event of a tornado or severe weather;

   h. Failed to review an Emergency Action Plan with each individual per OSHA 1910.38 (e);

   i. Failed to have a proper alarm and/or warning in place at the subject "fulfillment center" per OSHA 1910.38 (d) and 1910.165 to warn those at the subject "fulfillment center" of the approaching tornado;

   j. Carelessly required individuals including decedent, Austin McEwen, to continue working up until the moments before the tornado struck when Defendant knew or should have known that a tornado was imminent;

11

k. Improperly directed individuals including decedent, Austin McEwen, to shelter in a bathroom when Defendant knew or should have known that a bathroom was not a safe or proper area to shelter;

l. Failed to hold safety meetings with individuals including decedent, Austin McEwen, in advance of December 10, 2021 to prepare individuals on the safest course of action to take if a tornado is imminent;

m. Failed to timely inform individuals at the subject "fulfillment center" that a tornado was approaching so those individuals had adequate time to properly shelter and/or evacuate;

n. Were otherwise careless and negligent.

15. As a direct and proximate cause of one or more of the aforementioned careless negligent acts and/or omissions of Defendant, the Plaintiff's decedent, AUSTIN McEWEN, suffered serious injuries that resulted in his death.

16. At the time of decedent's death, AUSTIN McEWEN, left surviving a mother, Alice McEwen, and father, Randy McEwen, who have and will continue to suffer damages of a personal, pecuniary, and non-pecuniary nature, including great loss of society and companionship of decedent, AUSTIN McEWEN.

17. Plaintiff, ALICE McEWEN, has been duly appointed Special Administrator of the Estate of AUSTIN McEWEN, deceased, and brings this action pursuant to the Wrongful Death Act of Illinois, 740 ILCS 180/1 et. seq.

WHEREFORE, Plaintiff, ALICE McEWEN, as Special Administrator of the Estate of AUSTIN McEWEN, deceased, prays for judgment against Defendant, AMAZON.COM, LLC, in an amount in excess of Fifty-Thousand Dollars ($50,000.00).

## COUNT III: WRONGFUL DEATH: CONSTRUCTION NEGLIGENCE: CONTEGRA CONSTRUCTION COMPANY, LLC

1. On and before December 10, 2021, Defendant, CONTEGRA, was a construction and development company that builds commercial retail buildings, warehouses, office buildings, and institutions.

2. Prior to December 10, 2021, Defendant, CONTEGRA, built, developed, and/or constructed an Amazon "fulfillment center" known as "STL4" located in Edwardsville, Illinois. Defendant, CONTEGRA, was under contract with Defendants, AMAZON INC, AMAZON LLC, and/or TRISTAR, to build, develop and/or construct the subject warehouse.

3. Prior to December 10, 2021 and during all phases of the construction of the subject warehouse, Defendant, CONTEGRA, individually and through its agents, servants, and/or employees was present during the course of such construction and Defendant, CONTEGRA, participated, orchestrated, managed, supervised, controlled, directed, and/or was in charge of the work being done at the aforesaid project including but not limited to directing the means, methods and operative details of the work being done by on-site workers, including but not limited to workers of Defendant, TRISTAR. The Defendant, CONTEGRA, individually and through its agents, servants, and/or employees participated in coordinating the work being done and designated various work methods, had a responsibility to maintain a safe premise for all workers, maintained and checked work progress, and participated in the scheduling of the work and inspection of the work.

4. That at all relevant times, Defendant, CONTEGRA, had a duty to exercise reasonable care in its build, planning, and construction of the subject "fulfillment center" located in Edwardsville, Illinois

13

5. Notwithstanding its duties, at said time and place, Defendant, CONTEGRA, by and through its agents, servants and employees, was then and there guilty of one or more of the following careless and negligent acts and/or omissions:

a. Built and/or constructed the subject "fulfillment center" without a basement or actual shelter that could provide shelter when Defendant knew that Edwardsville, Illinois was prone to inclement weather and/or tornadoes;

b. Failed to recommend that the subject "fulfillment center" be built with a basement shelter or actual shelter that could provide shelter when Defendant knew that Edwardsville, Illinois was prone to inclement, severe weather and/or tornadoes;

c. Built and/or constructed the subject "fulfillment center" in a "tilt-up" wall construction manner when Defendant knew or should have known that this manner of construction causes walls to fall when struck with high winds and knew that Edwardsville, Illinois was prone to inclement, severe weather and tornadoes;

d. Failed to adequately build the subject "fulfillment center" in a manner to prevent walls from collapsing and the roof from separating when struck with high winds when Defendant knew that Edwardsville, Illinois was prone to inclement, severe weather and tornadoes;

e. Failed to build the subject "fulfillment center" pursuant to all local, state, and federal codes that prevented structural collapse due to inclement weather;

f. Was otherwise careless and negligent.

6. As a direct and proximate cause of one or more of the aforementioned careless negligent acts and/or omissions of Defendant, the Plaintiff's decedent, AUSTIN McEWEN, suffered serious injuries that resulted in his death.

7. At the time of decedent's death, AUSTIN McEWEN, left surviving a mother, Alice McEwen, and father, Randy McEwen, who have and will continue to suffer damages of a personal, pecuniary, and non-pecuniary nature, including great loss of society and companionship of decedent, AUSTIN McEWEN.

8. Plaintiff, ALICE McEWEN, has been duly appointed Special Administrator of the Estate of AUSTIN McEWEN, deceased, and brings this action pursuant to the Wrongful Death Act of Illinois, 740 ILCS 180/1 et. seq.

WHEREFORE, Plaintiff, ALICE McEWEN, as Special Administrator of the Estate of AUSTIN McEWEN, deceased, prays for judgment against Defendant, CONTEGRA CONSTRUCTION COMPANY, LLC, in an amount in excess of Fifty-Thousand Dollars ($50,000.00).

## COUNT IV: WRONGFUL DEATH: CONSTRUCTION NEGLIGENCE: TRISTAR PROPERTIES, LLC

1. On and before December 10, 2021, Defendant, TRISTAR, was a construction and development company that builds commercial retail buildings, warehouses, office buildings, and institutions.

2. Prior to December 10, 2021, Defendant, TRISTAR, built, developed, and/or constructed a 717,000 square foot Amazon "fulfillment center" known as "STL4" located in Edwardsville, Illinois. Defendant, CONTEGRA, was under contract with Defendants, AMAZON INC. AMAZON LLC. and/or CONTEGRA, to build, develop and/or construct the subject warehouse.

3. Prior to December 10, 2021 and during all phases of the construction of the subject warehouse, Defendant, TRISTAR, individually and through its agents, servants, and/or employees was present during the course of such construction and Defendant, TRISTAR, participated, orchestrated, managed, supervised, controlled, directed, and/or was in charge of the work being done at the aforesaid project including but not limited to directing the means, methods and operative details of the work being done by on-site workers, including but not limited to workers

of Defendant, CONTEGRA. The Defendant, TRISTAR, individually and through its agents, servants, and/or employees participated in coordinating the work being done and designated various work methods, had a responsibility to maintain a safe premise for all workers, maintained and checked work progress, and participated in the scheduling of the work and inspection of the work.

4. That at all relevant times, Defendant, TRISTAR, had a duty to exercise reasonable care in its build, planning, and construction of the subject "fulfillment center" located in Edwardsville, Illinois

5. Notwithstanding its duties, at said time and place, Defendant, TRISTAR, by and through its agents, servants and employees, was then and there guilty of one or more of the following careless and negligent acts and/or omissions:

a. Built and/or constructed the subject "fulfillment center" without a basement or actual shelter that could provide shelter when Defendant knew that Edwardsville, Illinois was prone to inclement weather and/or tornadoes;

b. Failed to recommend that the subject "fulfillment center" be built with a basement shelter or actual shelter that could provide shelter when Defendant knew that Edwardsville, Illinois was prone to inclement, severe weather and/or tornadoes;

c. Built and/or constructed the subject "fulfillment center" in a "tilt-up" wall construction manner when Defendant knew or should have known that this manner of construction causes walls to fall when struck with high winds and knew that Edwardsville, Illinois was prone to inclement, severe weather and tornadoes;

d. Failed to adequately build the subject "fulfillment center" in a manner to prevent walls from collapsing and the roof from separating when struck with high winds when Defendant knew that Edwardsville, Illinois was prone to inclement, severe weather and tornadoes;

e. Failed to build the subject "fulfillment center" pursuant to all local, state, and federal codes that prevented structural collapse due to inclement weather;

f.   Was otherwise careless and negligent.

6.   As a direct and proximate cause of one or more of the aforementioned careless negligent acts and/or omissions of Defendant, the Plaintiff's decedent, AUSTIN McEWEN, suffered serious injuries that resulted in his death.

7.   At the time of decedent's death, AUSTIN McEWEN, left surviving a mother, Alice McEwen, and father, Randy McEwen, who have and will continue to suffer damages of a personal, pecuniary, and non-pecuniary nature, including great loss of society and companionship of decedent, AUSTIN McEWEN.

8.   Plaintiff, ALICE McEWEN, has been duly appointed Special Administrator of the Estate of AUSTIN McEWEN, deceased, and brings this action pursuant to the Wrongful Death Act of Illinois, 740 ILCS 180/1 et. seq.

WHEREFORE, Plaintiff, ALICE McEWEN, as Special Administrator of the Estate of AUSTIN McEWEN, deceased, prays for judgment against Defendant, TRISTAR PROPERTIES, LLC, in an amount in excess of Fifty-Thousand Dollars ($50,000.00).

/s/ Jack J. Casciato
Jack J. Casciato, One of the attorneys for Plaintiff

/s/ John Malec
John Malec, One of the attorneys for Plaintiff

Robert A. Clifford
Jack J. Casciato
CLIFFORD LAW OFFICES
120 North LaSalle Street, 36th Floor
Chicago, Illinois 60602
T: (312) 899-9090
RAC@cliffordlaw.com
JJC@cliffordlaw.com
Firm ID: 32640

John Malec  
Martin, Malec & Leopold, P.C.  
1007 Olive St., 5th Floor  
St. Louis, MO 63101  
(314) 231-3323  
jmalec@mmllawyers.com  
Bar #6184109