# Exhibit 1

***EFILED***
Case Number 2022LA000055
Date: 3/28/2022 12:30 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT**
**FOR THE THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

| | | |
|---|---|---|
| **ALICE McEWEN**, as Independent | ) | |
| Administrator of the | ) | |
| Estate of **AUSTIN McEWEN**, | ) | |
| Deceased | ) | No.: 2022 LA 000055 |
| | ) | |
| Plaintiff, | ) | **Plaintiff demands trial by jury** |
| | ) | |
| v. | ) | |
| | ) | |
| **AMAZON.COM, INC.**, a | ) | |
| corporation, | ) | |
| **AMAZON LOGISTICS, INC.**, a | ) | |
| corporation | ) | |
| **CONTEGRA CONSTRUCTION** | ) | |
| **COMPANY, LLC**, a limited liability | ) | |
| company, | ) | |
| **TRISTAR PROPERTY ASSOCIATES,** | ) | |
| **LLC**, | ) | |
| a limited liability company | ) | |
| **STOCK & ASSOCIATES** | ) | |
| **CONSULTING ENGINEERS, INC.** | ) | |
| a corporation, | ) | |
| **GRAY DESIGN GROUP, INC.**, | ) | |
| a corporation and, | ) | |
| **MCNEALY ENGINEERING, INC.**, | ) | |
| a corporation. | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT AT LAW

NOW COMES, Plaintiff, ALICE McEWEN, as Independent Administrator of the Estate

of AUSTIN McEWEN, deceased, through her attorneys, CLIFFORD LAW OFFICES, P.C., and

hereby complains in Plaintiff's First Amended Complaint against the following Defendants,

AMAZON.COM, INC. ("AMAZON INC."), AMAZON LOGISTICS, INC ('AMAZON

LOGISTICS"), CONTEGRA CONSTRUCTION COMPANY, LLC ("CONTEGRA"), TRISTAR

PROPERTY ASSOCIATES, LLC ("TRISTAR"), STOCK & ASSOCIATES CONSULTING

Exhibit A

ENGINEERS, INC. ("STOCK"), GRAY DESIGN GROUP, INC. ("GRAY"), and MCNEALY
ENGINEERING, INC. ("MCNEALY")

**DEFENDANTS**

1.     Defendant, AMAZON INC., is a multinational technology company, the world's
largest internet company, and the world's largest retailer. Defendant, AMAZON INC., is a Fortune
100 company headquartered in Seattle, WA. Defendant, AMAZON INC., maintains, manages, and
controls over 100 "fulfillment centers" and/or "delivery stations" in the United States. These
"fulfillment centers" and/or "delivery stations" create a vast network for Defendant, AMAZON
INC., to deliver goods to customers in using these centers to store, ship, and deliver goods. On
December 10, 2021 and at all relevant times, Defendant, AMAZON INC., maintained a warehouse
or "delivery station" known as "DLI4" located in Edwardsville, Illinois. In addition, on December
10, 2021, and at all relevant times, Defendant, AMAZON INC., utilized a wide range of
independently contracted drivers and delivery carriers known as Delivery Service Partners to drive,
haul, and make deliveries for Defendant, AMAZON INC. On December 10, 2021, and at all
relevant times, the "delivery station" known as "DLI4" was operated, maintained, controlled, and
managed by employees and/or agents of Defendant, AMAZON INC.

2.     Defendant, AMAZON LOGISTICS, is the delivery and logistics service provider
for Defendant, AMAZON INC., a multinational technology company, the world's largest internet
company, and the world's largest retailer. Defendant, AMAZON LOGISTICS, maintains,
manages, and controls over 100 "fulfillment centers" and/or "delivery stations" in the United
States. These "fulfillment centers" and/or "delivery stations" create a vast network for Defendant,
AMAZON INC. and AMAZON LOGISTICS, to deliver goods to customers in using these centers
to store, ship, and deliver goods. On December 10, 2021, and at all relevant times, Defendant,

2

Exhibit A

AMAZON LOGISTICS, maintained a warehouse or "delivery station" known as "DLI4" located in Edwardsville, Illinois. In addition, on December 10, 2021, and at all relevant times, Defendant, AMAZON LOGISTICS, utilized a wide range of independently contracted drivers and delivery carriers known as Delivery Service Partners to drive, haul, and make deliveries for Defendant, AMAZON INC and AMAZON LOGISTICS. On December 10, 2021, and at all relevant times, the "delivery station" known as "DLI4" was operated, maintained, controlled, and managed by employees and/or agents of Defendant, AMAZON LOGISTICS.

3.      Defendant, CONTEGRA, is headquartered in Edwardsville, Illinois and maintains members that are domiciled in Illinois. Defendant, CONTEGRA, is a construction and development company that builds commercial retail buildings, warehouses, office buildings, and institutions. Defendant, CONTEGRA, built, developed, and/or constructed an Amazon "delivery station" known as "DLI4" located in Edwardsville, Illinois. Defendant, CONTEGRA, was under contract with Defendants, AMAZON INC., AMAZON LOGISTICS, and/or TRISTAR, to build, develop and/or construct the subject warehouse.

4.      Defendant, TRISTAR, is headquartered in Missouri. Defendant, TRISTAR, is a developer, redeveloper, and real estate acquirer of industrial real estate. Defendant, TRISTAR, was the developer of an Amazon "delivery station" known as "DLI4" located in Edwardsville, Illinois. Defendant, TRISTAR, was under contract with Defendants, AMAZON INC., AMAZON LOGISTICS and/or CONTEGRA, to build, develop and/or construct the subject warehouse located in Edwardsville, Illinois.

5.      Defendant, STOCK, is a civil engineering and land surveying firm based in St. Louis, Missouri. Defendant, STOCK, provided construction specifications, shop drawings, and engineering specifications for the build of the subject "delivery station" known as DLI4 in

Exhibit A

Edwardsville, Illinois, including but not limited to construction specifications, shop drawings, and engineering specifications to build the facility in a "tilt-up" manner.

6.      Defendant, GRAY, is a master planning, design, and architecture firm based in St. Louis, MO that was the architect for the subject "delivery station" known as DLI4 in Edwardsville, Illinois.

7.      Defendant, MCNEALY, is a structural engineering firm based in St. Louis, Missouri that provides architectural restoration, structural engineering, and architectural engineering services including such services for the subject "delivery station" known as DLI4 in Edwardsville, Illinois.

## COUNTS

## COUNT I: WRONGFUL DEATH: NEGLIGENCE: AMAZON.COM, INC.

1.      On December 10, 2021, and at all relevant times, Defendant, AMAZON INC., operated, maintained, managed, and/or controlled a "delivery station" known as "DLI4" located in Edwardsville, Illinois.

2.      On December 10, 2021, and at all relevant times, the "delivery station" known as "DLI4" did not have a basement shelter even though Defendant, AMAZON INC., knew or should have known that the Edwardsville, Illinois area was an area prone to tornadoes and inclement, high-wind events.

3.      On December 10, 2021, and at all relevant times, the "delivery station" known as "DLI4" did not have a "safe room" consistent with FEMA P-360 and FEMA P-361 even though Defendant, AMAZON INC., knew or should have known that the Edwardsville, Illinois area was an area prone to tornadoes and inclement, high-wind events.

Exhibit A

4.      On December 10, 2021, and at all relevant times, the "delivery station" known as "DLI4" did not have a "best available refugee area" consistent with FEMA P-431 even though Defendant, AMAZON INC., knew or should have known that the Edwardsville, Illinois area was an area prone to tornadoes and inclement, high-wind events.

5.      On December 10, 2021, and at all relevant times, the "delivery station" known as "DLI4" did not have an Emergency Action Plan (EAP) pursuant to OSHA 1910.38 (a-f) even though Defendant, AMAZON INC., knew or should have known that the Edwardsville, Illinois area was an area prone to tornadoes and inclement, high-wind events.

6.      On December 10, 2021, and at all relevant times, the "delivery station" known as "DLI4" was operated, maintained, managed, and/or controlled by employees and/or agents of Defendant, AMAZON INC.

7.      On December 10, 2021, and at all relevant times, employees working for Defendant, AMAZON LOGISTICS, and other entities were directed and controlled by Defendant, AMAZON INC.

8.      On December 10, 2021, and at all relevant times, decedent, AUSTIN McEWEN, was not an employee of Defendant, AMAZON INC., but instead an employee and/or agent of an independently contracted Delivery Service Partner contracted to drive an "Amazon" commercial vehicle to make deliveries on behalf of Defendant, AMAZON INC.

9.      On December 10, 2021 and at all relevant times, Defendant, AMAZON INC., controlled, directed, and/or instructed decedent, AUSTIN McEWEN, which included controlling, directing, and/or instructing decedent, AUSTIN McEWEN, on the operative details of his work, including but not limited to, controlling the deliveries he was to make, controlling the routes he was to take, requiring him to wear a uniform and/or apparel that displayed the name "Amazon" on

Exhibit A

it, requiring him to follow policies and procedures of Defendant, AMAZON INC., controlling the number of deliveries he was to make during a shift, monitoring and scoring his work performance, requiring him to share his phone data, and having the means to terminate him.

10.     On December 10, 2021 and at all relevant times, Defendant, AMAZON INC, was the alter ego of Defendant, AMAZON LOGISTICS.

11.     On December 10, 2021, at approximately 8:28 p.m. an EF-3 tornado began on the south side of Interstate 270 and moved northeast striking the subject Amazon "delivery station" known as "DLI4" causing parts of the center's walls to collapse and other multiple structure failures which resulted in numerous injuries and the deaths of six individuals, one being decedent, AUSTIN McEWEN.

12.     On and before December 10, 2021, Defendant, AMAZON INC., did not employ or maintain a meteorologist to forecast inclement and dangerous weather developments, including tornados.

13.     Following December 10, 2021, Defendant, AMAZON INC., posted online a job post for a "Chief Meteorologist" to be responsible for daily forecasts for thousands of global Amazon locations.

14.     On December 10, 2021, Defendant, AMAZON INC., knew or should have known that tornadoes were possible at or near the subject "delivery station" as early as or near 3:44 a.m. on Thursday, December 9, 2021, when the National Weather Service issued the following weather warning: *"There is chance of thunderstorms late Friday afternoon into the night across southeastern and east-central Missouri as well as south-central and southwestern Illinois. A few thunderstorms could become strong to severe in southeastern Missouri and southwestern Illinois*

Exhibit A

*late Friday evening into night. The main threat will be strong to damage wind gusts, but a tornado is also possible.*"

15.     On December 10, 2021, Defendant, AMAZON INC., again knew or should have known that tornadoes were possible at or near the subject "delivery station" when the National Weather Service on December 9, 2021, at or near 2:58 p.m. reported: "*Scattered severe storms are possible across southeast Missouri and southwest Illinois between 8:00 p.m. Friday night and 3:00 a.m. early Saturday. Any storms that develop will be fast moving. The primary threat with these storms will be damaging winds. A few tornadoes will be possible as well."*

16.     On December 10, 2021, Defendant, AMAZON INC., again knew or should have known that tornadoes were possible at or near the subject "delivery station" when the National Weather Service issued a Tornado Watch #553 at or near 5:20 p.m., which included Madison County, Illinois, indicating "conditions are favorable for tornadoes" and holding that there was a 70% chance of two or more tornadoes.

17.     On December 10, 2021, at or near 8:06 p.m., the National Weather Service issued a "take shelter now" tornado warning for the Edwardsville, Illinois area.

18.     Despite having numerous warnings from the National Weather Service or other advisories that the Edwardsville, Illinois area was at-risk of devastating weather and/or tornadoes, Defendant, AMAZON INC., had workers and independently contracted Deliver Service Partners working during a holiday "peak season" until moments before the EF-3 tornado obliterated the subject "delivery station" in Edwardsville, Illinois.

19.     At all times on December 10, 2021, Defendant, AMAZON INC., knew or should have known and foreseen that the subject "delivery station" was in an area that could sustain devastating weather and/or a tornado on December 10, 2021.

Exhibit A

20.     On December 10, 2021, and at all relevant times, Defendant, AMAZON INC., had duties to exercise reasonable care in its operation, management, and/or control of the subject "delivery station" and towards all workers present at the center, including but not limited to, independently contracted DSP contractors including decedent, AUSTIN McEWEN, to prevent them from sustaining injuries and death.

21.     Notwithstanding its duties, on December 10, 2021 and all relevant times, Defendant, AMAZON INC., by and through its agents and employees, failed to exercise reasonable care in the following manners:

a.     Failed to evacuate all those present at the subject "delivery station" when Defendant knew or should have known that keeping individuals working at the center, including decedent, Austin McEwen, placed them in imminent danger when Defendant knew or should have known the area was at-risk of a tornado;

b.     Failed to properly monitor the developing inclement weather at or near Edwardsville, Illinois to timely implement life-saving tornado preparedness and response procedures such as timely evacuating the facility;

c.     Failed to operate, maintain and manage a warehouse in an area prone to tornadoes that was equipped with a basement shelter;

d.     Failed to operate, maintain and manage a warehouse in an area prone to tornadoes that was equipped with a "safe room" consistent with FEMA P-320 and FEMA P-361;

e.     Failed to operate, maintain and manage a warehouse in an area prone to tornadoes that was equipped with a "best available refugee area" consistent with FEMA P-431;

f.     Failed to operate, maintain, and manage a warehouse in an area prone to tornadoes that was built to withstand tornado size gusts;

g.     Failed to ensure that all individuals at the subject warehouse were aware of the safest place to shelter despite the "delivery station" not having a basement shelter, "safe room," or "best available refugee area;"

8

h.      Failed to have a qualified architect or engineer designate the "best available refugee area" per FEMA P-431;

i.      Failed to have a proper Emergency Action Plan meeting the requirements of OSHA 29 CFR 1910.38;

j.      Failed to properly educate and train individuals at the subject "delivery station" on a proper Emergency Action Plan in the event of a tornado or severe weather;

k.      Failed to review an Emergency Action Plan with each individual per OSHA 1910.38 (e);

l.      Failed to have a proper alarm and/or warning in place at the subject "delivery station" per OSHA 1910.38 (d) and 1910.165 to warn those at the subject "delivery station" of the approaching tornado known or should have been known;

m.     Carelessly required individuals including decedent, Austin McEwen, to continue working up until the moments before the tornado struck when Defendant knew or should have known that a tornado was imminent and had ample time to evacuate;

n.      Improperly directed individuals including decedent, Austin McEwen, to shelter in a bathroom when Defendant knew or should have known that a bathroom was not a safe or proper area to shelter;

o.      Failed to hold safety meetings with individuals including decedent, Austin McEwen, in advance of December 10, 2021, to prepare individuals on the safest course of action to take if a tornado is imminent;

p.      Failed to timely inform individuals at the subject "delivery station" that a tornado was approaching so those individuals had adequate time to properly shelter and/or evacuate;

q.      Carelessly directed employees and/or independent drivers to return back to the subject "delivery station" when Defendant knew or should have known that a tornado was approaching the area;

r.      Failed to employ one that was responsible for tracking and monitoring severe or inclement weather;

s.      Failed to provide a warehouse that was built in compliance with International Building Code Section 1604;

t.      Were otherwise careless and negligent.

9

Exhibit A

22.     As a direct and proximate cause of one or more of the aforementioned careless negligent acts and/or omissions of Defendant, the Plaintiff's decedent, AUSTIN McEWEN, suffered serious injuries that resulted in his death.

23.     At the time of decedent's death, AUSTIN McEWEN, left surviving a mother, Alice McEwen, and father, Randy McEwen, who have and will continue to suffer damages of a personal, pecuniary, and non-pecuniary nature, including great loss of society and companionship of decedent, AUSTIN McEWEN.

24.     Plaintiff, ALICE McEWEN, has been duly appointed Independent Administrator of the Estate of AUSTIN McEWEN, deceased, and brings this action pursuant to the Wrongful Death Act of Illinois, 740 ILCS 180/1 et. seq.

WHEREFORE, Plaintiff, ALICE McEWEN, as Independent Administrator of the Estate of AUSTIN McEWEN, deceased, prays for judgment against Defendant, AMAZON.COM, INC., in an amount in excess of Fifty-Thousand Dollars ($50,000.00).

## COUNT II: SURVIVAL ACT: NEGLIGENCE: AMAZON.COM, INC.

1.     Plaintiff re-alleges Paragraphs 1-21 of Count I for Paragraph 1 of Count II.

2.     As a direct and proximate cause of one or more of the aforementioned careless negligent acts and/or omissions of Defendant, the Plaintiff's decedent, AUSTIN McEWEN, suffered serious injuries of a personal and pecuniary nature, including but not limited to pain and suffering, and would have been entitled to recover for these damages had he not died from Defendant's conduct.

3.     Plaintiff, ALICE McEWEN, has been duly appointed Independent Administrator of the Estate of AUSTIN McEWEN, deceased, and brings this action pursuant to the Survival Act at 755 ILCS 5/27-6.

10

Exhibit A

WHEREFORE, Plaintiff, ALICE McEWEN, as Independent Administrator of the Estate of AUSTIN McEWEN, deceased, prays for judgment against Defendant, AMAZON.COM, INC., in an amount in excess of Fifty-Thousand Dollars ($50,000.00).

## COUNT III: WRONGFUL DEATH: NEGLIGENCE: AMAZON LOGISTICS, INC.

1.      On December 10, 2021, and at all relevant times, Defendant, AMAZON LOGISTICS, operated, maintained, managed, and/or controlled a "delivery station" known as "DLI4" located in Edwardsville, Illinois.

2.      On December 10, 2021, and at all relevant times, the "delivery station" known as "DLI4" did not have a basement shelter even though Defendant, AMAZON LOGISTICS, knew or should have known that the Edwardsville, Illinois area was an area prone to tornadoes and inclement, high-wind events.

3.      On December 10, 2021, and at all relevant times, the "delivery station" known as "DLI4" did not have a "safe room" consistent with FEMA P-360 and FEMA P-361 even though Defendant, AMAZON LOGISTICS, knew or should have known that the Edwardsville, Illinois area was an area prone to tornadoes and inclement, high-wind events.

4.      On December 10, 2021, and at all relevant times, the "delivery station" known as "DLI4" did not have a "best available refugee area" consistent with FEMA P-431 even though Defendant, AMAZON LOGISTICS, knew or should have known that the Edwardsville, Illinois area was an area prone to tornadoes and inclement, high-wind events.

5.      On December 10, 2021, and at all relevant times, the "delivery station" known as "DLI4" did not have an Emergency Action Plan (EAP) pursuant to OSHA 1910.38 (a-f) even though Defendant, AMAZON LOGISTICS, knew or should have known that the Edwardsville, Illinois area was an area prone to tornadoes and inclement, high-wind events.

Exhibit A

6.      On December 10, 2021, and at all relevant times, the "delivery station" known as "DLI4" was operated, maintained, managed, and/or controlled by employees and/or agents of Defendant, AMAZON LOGISTICS.

7.      On December 10, 2021, and at all relevant times, decedent, AUSTIN McEWEN, was not an employee of Defendant, AMAZON LOGISTICS, but instead an employee and/or agent of an independently contracted Delivery Service Partner contracted to drive an "Amazon" commercial vehicle to make deliveries on behalf of Defendant, AMAZON LOGISTICS.

8.      On December 10, 2021 and at all relevant times, Defendant, AMAZON LOGISTICS, controlled, directed, and/or instructed decedent, AUSTIN McEWEN, which included controlling, directing, and/or instructing decedent, AUSTIN McEWEN, on the operative details of his work, including but not limited to, controlling the deliveries he was to make, controlling the routes he was to take, requiring him to wear a uniform and/or apparel that displayed the name "Amazon" on it, requiring him to follow policies and procedures of Defendant, AMAZON LOGISTICS, controlling the number of deliveries he was to make during a shift, monitoring and scoring his work performance, requiring him to share his phone data, and having the means to terminate him.

9.      On December 10, 2021, at approximately 8:28 p.m. an EF-3 tornado began on the south side of Interstate 270 and moved northeast striking the subject Amazon "delivery station" known as "DLI4" causing parts of the center's walls to collapse and other multiple structure failures which resulted in numerous injuries and the deaths of six individuals, one being decedent, AUSTIN McEWEN.

Exhibit A

10.     On and before December 10, 2021, Defendant, AMAZON LOGISTICS, did not employ or maintain a meteorologist to forecast inclement and dangerous weather developments, including tornados.

11.     Following December 10, 2021, Defendant, AMAZON LOGISTICS, posted online a job post for a "Chief Meteorologist" to be responsible for daily forecasts for thousands of global Amazon locations.

12.     On December 10, 2021, Defendant, AMAZON LOGISTICS, knew or should have known that tornadoes were possible at or near the subject "delivery station" as early as or near 3:44 a.m. on Thursday, December 9, 2021, when the National Weather Service issued the following weather warning: *"There is chance of thunderstorms late Friday afternoon into the night across southeastern and east-central Missouri as well as south-central and southwestern Illinois. A few thunderstorms could become strong to severe in southeastern Missouri and southwestern Illinois late Friday evening into night. The main threat will be strong to damage wind gusts, but a tornado is also possible.*"

13.     On December 10, 2021, Defendant, AMAZON LOGISTICS, again knew or should have known that tornadoes were possible at or near the subject "delivery station" when the National Weather Service on December 9, 2021, at or near 2:58 p.m. reported: "*Scattered severe storms are possible across southeast Missouri and southwest Illinois between 8:00 p.m. Friday night and 3:00 a.m. early Saturday. Any storms that develop will be fast moving. The primary threat with these storms will be damaging winds. A few tornadoes will be possible as well."*

14.     On December 10, 2021, Defendant, AMAZON LOGISTICS, again knew or should have known that tornadoes were possible at or near the subject "delivery station" when the National Weather Service issued a Tornado Watch #553 at 5:20 p.m., which included Madison

Exhibit A

County, Illinois, indicating "conditions are favorable for tornadoes" and holding that there was a 70% chance of two or more tornadoes.

15.     On December 10, 2021, at 8:06 p.m., the National Weather Service issued a "take shelter now" tornado warning for the Edwardsville, Illinois area.

16.     Despite having numerous warnings from the National Weather Service or other advisories that the Edwardsville, Illinois area was at-risk of devastating weather and/or tornadoes, Defendant, AMAZON LOGISTICS, had workers and independently contracted Deliver Service Partners working during a holiday "peak season" until moments before the EF-3 tornado obliterated the subject "delivery station" in Edwardsville, Illinois.

17.     At all times on December 10, 2021, Defendant, AMAZON LOGISTICS, knew or should have known and foreseen that the subject "delivery station" was in an area that could sustain devastating weather and/or a tornado on December 10, 2021.

18.     On December 10, 2021, and at all relevant times, Defendant, AMAZON LOGISTICS, had duties to exercise reasonable care in its operation, management, and/or control of the subject "delivery station" and towards all workers present at the center, including but not limited to, independently contracted DSP contractors including decedent, AUSTIN McEWEN, to prevent them from sustaining injuries and death.

19.     Notwithstanding its duties, on December 10, 2021, and all relevant times, Defendant, AMAZON LOGISTICS, by and through its agents and employees, failed to exercise reasonable care in the following manners:

    a.     Failed to evacuate all those present at the subject "delivery station" when Defendant knew or should have known that keeping individuals working at the center, including decedent, Austin McEwen, placed them in imminent danger when Defendant knew or should have known the area was at-risk of a tornado;

14

Exhibit A

b.     Failed to properly monitor the developing inclement weather at or near Edwardsville, Illinois to timely implement life-saving tornado preparedness and response procedures such as timely evacuating the facility;

c.     Failed to operate, maintain and manage a warehouse in an area prone to tornadoes that was equipped with a basement shelter;

d.     Failed to operate, maintain and manage a warehouse in an area prone to tornadoes that was equipped with a "safe room" consistent with FEMA P-320 and FEMA P-361;

e.     Failed to operate, maintain and manage a warehouse in an area prone to tornadoes that was equipped with a "best available refugee area" consistent with FEMA P-431;

f.     Failed to operate, maintain, and manage a warehouse in an area prone to tornadoes that was built to withstand tornado size gusts;

g.     Failed to ensure that all individuals at the subject warehouse were aware of the safest place to shelter despite the "delivery station" not having a basement shelter, "safe room," or "best available refugee area;"

h.     Failed to have a qualified architect or engineer designate the "best available refugee area" per FEMA P-431;

i.     Failed to have a proper Emergency Action Plan meeting the requirements of OSHA 29 CFR 1910.38;

j.     Failed to properly educate and train individuals at the subject "delivery station" on a proper Emergency Action Plan in the event of a tornado or severe weather;

k.     Failed to review an Emergency Action Plan with each individual per OSHA 1910.38 (e);

l.     Failed to have a proper alarm and/or warning in place at the subject "delivery station" per OSHA 1910.38 (d) and 1910.165 to warn those at the subject "delivery station" of the approaching tornado known or should have been known;

m.    Carelessly required individuals including decedent, Austin McEwen, to continue working up until the moments before the tornado struck when Defendant knew or should have known that a tornado was imminent and had ample time to evacuate;

Exhibit A

n.    Improperly directed individuals including decedent, Austin McEwen, to shelter in a bathroom when Defendant knew or should have known that a bathroom was not a safe or proper area to shelter;

o.    Failed to hold safety meetings with individuals including decedent, Austin McEwen, in advance of December 10, 2021, to prepare individuals on the safest course of action to take if a tornado is imminent;

p.    Failed to timely inform individuals at the subject "delivery station" that a tornado was approaching so those individuals had adequate time to properly shelter and/or evacuate;

q.    Carelessly directed employees and/or independent drivers to return back to the subject "delivery station " when Defendant knew or should have known that a tornado was approaching the area;

r.    Failed to employ one that was responsible for tracking and monitoring severe or inclement weather;

s.    Failed to provide a warehouse that was built in compliance with International Building Code Section 1604;

t.    Were otherwise careless and negligent.

20.    As a direct and proximate cause of one or more of the aforementioned careless negligent acts and/or omissions of Defendant, the Plaintiff's decedent, AUSTIN McEWEN, suffered serious injuries that resulted in his death.

21.    At the time of decedent's death, AUSTIN McEWEN, left surviving a mother, Alice McEwen, and father, Randy McEwen, who have and will continue to suffer damages of a personal, pecuniary, and non-pecuniary nature, including great loss of society and companionship of decedent, AUSTIN McEWEN.

22.    Plaintiff, ALICE McEWEN, has been duly appointed Independent Administrator of the Estate of AUSTIN McEWEN, deceased, and brings this action pursuant to the Wrongful Death Act of Illinois, 740 ILCS 180/1 et. seq.

Exhibit A

WHEREFORE, Plaintiff, ALICE McEWEN, as Independent Administrator of the Estate of AUSTIN McEWEN, deceased, prays for judgment against Defendant, AMAZON LOGISTICS, INC. in an amount in excess of Fifty-Thousand Dollars ($50,000.00).

### COUNT IV: SURVIVAL ACT: NEGLIGENCE: AMAZON LOGISTICS, INC.

1.      Plaintiff re-alleges Paragraphs 1-19 of Count III for Paragraph 1 of Count IV.

2.      As a direct and proximate cause of one or more of the aforementioned careless negligent acts and/or omissions of Defendant, the Plaintiff's decedent, AUSTIN McEWEN, suffered serious injuries of a personal and pecuniary nature, including but not limited to pain and suffering, and would have been entitled to recover for these damages had he not died from Defendant's conduct.

3.      Plaintiff, ALICE McEWEN, has been duly appointed Independent Administrator of the Estate of AUSTIN McEWEN, deceased, and brings this action pursuant to the Survival Act at 755 ILCS 5/27-6.

WHEREFORE, Plaintiff, ALICE McEWEN, as Independent Administrator of the Estate of AUSTIN McEWEN, deceased, prays for judgment against Defendant, AMAZON LOGISTICS, INC., in an amount in excess of Fifty-Thousand Dollars ($50,000.00).

### COUNT V: WRONGFUL DEATH: CONSTRUCTION NEGLIGENCE: CONTEGRA CONSTRUCTION COMPANY, LLC

1.      On and before December 10, 2021, Defendant, CONTEGRA, was a construction and development company that built commercial retail buildings, warehouses, office buildings, and institutions.

2.      Prior to December 10, 2021, Defendant, CONTEGRA, built, developed, and/or constructed an Amazon "delivery station" known as "DLI4" located in Edwardsville, Illinois.

Exhibit A

Defendant, CONTEGRA, was under contract with Defendants, AMAZON INC, AMAZON LOGISTICS, and/or TRISTAR, to build, develop and/or construct the subject warehouse.

3.     Prior to December 10, 2021 and during all phases of the construction of the subject warehouse, Defendant, CONTEGRA, individually and through its agents, servants, and/or employees was present during the course of such construction and Defendant, CONTEGRA, participated, orchestrated, managed, supervised, controlled, directed, and/or was in charge of the work being done at the aforesaid project including but not limited to directing the means, methods and operative details of the work being done by on-site workers, including but not limited to workers of Defendant, TRISTAR. The Defendant, CONTEGRA, individually and through its agents, servants, and/or employees participated in coordinating the work being done and designated various work methods, had a responsibility to maintain a safe premise for all workers, maintained and checked work progress, and participated in the scheduling of the work and inspection of the work.

4.     That at all relevant times, Defendant, CONTEGRA, had a duty to exercise reasonable care in its build, planning, and construction of the subject "delivery station" located in Edwardsville, Illinois

5.     Notwithstanding its duties, at said time and place, Defendant, CONTEGRA, by and through its agents, servants and employees, was then and there guilty of one or more of the following careless and negligent acts and/or omissions:

a.     Built and/or constructed the subject "delivery station" without a basement or actual shelter that could provide shelter when Defendant knew that Edwardsville, Illinois was prone to inclement weather including but not limited to tornadoes;

b.     Built and/or constructed the subject "delivery station" without a "safe room" that could provide shelter when Defendant knew that

18

Exhibit A

Edwardsville, Illinois was prone to inclement weather including but not limited to tornadoes;

c.  Failed to recommend that the subject "delivery station" be built with a basement shelter, shelter or "safe room" that could provide shelter when Defendant knew that Edwardsville, Illinois was prone to inclement, severe weather and/or tornadoes;

d.  Built and/or constructed the subject "delivery station" in a "tilt-up" wall construction manner when Defendant knew or should have known that this manner of construction causes walls to fall when struck with high winds and knew that Edwardsville, Illinois was prone to inclement, severe weather and tornadoes;

e.  Failed to adequately build the subject "delivery station" in a manner to prevent walls from collapsing and the roof from separating when struck with high winds when Defendant knew that Edwardsville, Illinois was prone to inclement, severe weather and tornadoes;

f.  Failed to build the subject "delivery station" pursuant to all local, state, and federal codes that prevented structural collapse due to inclement weather;

g.  Failed to provide a warehouse that was built in compliance with International Building Code Section 1604;

h.  Was otherwise careless and negligent.

6.  As a direct and proximate cause of one or more of the aforementioned careless negligent acts and/or omissions of Defendant, the Plaintiff's decedent, AUSTIN McEWEN, suffered serious injuries that resulted in his death.

7.  At the time of decedent's death, AUSTIN McEWEN, left surviving a mother, Alice McEwen, and father, Randy McEwen, who have and will continue to suffer damages of a personal, pecuniary, and non-pecuniary nature, including great loss of society and companionship of decedent, AUSTIN McEWEN.

19

Exhibit A

8.     Plaintiff, ALICE McEWEN, has been duly appointed Independent Administrator of the Estate of AUSTIN McEWEN, deceased, and brings this action pursuant to the Wrongful Death Act of Illinois, 740 ILCS 180/1 et. seq.

WHEREFORE, Plaintiff, ALICE McEWEN, as Independent Administrator of the Estate of AUSTIN McEWEN, deceased, prays for judgment against Defendant, CONTEGRA CONSTRUCTION COMPANY, LLC, in an amount in excess of Fifty-Thousand Dollars ($50,000.00).

## COUNT VI: SURVIVAL ACT: NEGLIGENCE: CONTEGRA CONSTRUCTION COMPANY, LLC

1.     Plaintiff re-alleges Paragraphs 1-5 of Count V for Paragraph 1 of Count VI

2.     As a direct and proximate cause of one or more of the aforementioned careless negligent acts and/or omissions of Defendant, the Plaintiff's decedent, AUSTIN McEWEN, suffered serious injuries of a personal and pecuniary nature, including but not limited to pain and suffering, and would have been entitled to recover for these damages had he not died from Defendant's conduct.

3.     Plaintiff, ALICE McEWEN, has been duly appointed Independent Administrator of the Estate of AUSTIN McEWEN, deceased, and brings this action pursuant to the Survival Act at 755 ILCS 5/27-6.

WHEREFORE, Plaintiff, ALICE McEWEN, as Independent Administrator of the Estate of AUSTIN McEWEN, deceased, prays for judgment against Defendant, CONTEGRA CONSTRUCTION , LLC, in an amount in excess of Fifty-Thousand Dollars ($50,000.00).

Exhibit A

## COUNT VII: WRONGFUL DEATH: CONSTRUCTION NEGLIGENCE: TRISTAR PROPERTY ASSOCIATES, LLC

1.      On and before December 10, 2021, Defendant, TRISTAR, was a construction and development company that builds commercial retail buildings, warehouses, office buildings, and institutions.

2.      Prior to December 10, 2021, Defendant, TRISTAR, built, developed, and/or constructed an Amazon "delivery station" known as "DLI4" located in Edwardsville, Illinois. Defendant, TRISTAR, was under contract with Defendants, AMAZON INC. AMAZON LOGISTICS and/or CONTEGRA, to build, develop and/or construct the subject warehouse.

3.      Prior to December 10, 2021 and during all phases of the construction of the subject warehouse, Defendant, TRISTAR, individually and through its agents, servants, and/or employees was present during the course of such construction and Defendant, TRISTAR, participated, orchestrated, managed, supervised, controlled, directed, and/or was in charge of the work being done at the aforesaid project including but not limited to directing the means, methods and operative details of the work being done by on-site workers, including but not limited to workers of Defendant, TRISTAR. The Defendant, TRISTAR, individually and through its agents, servants, and/or employees participated in coordinating the work being done and designated various work methods, had a responsibility to maintain a safe premise for all workers, maintained and checked work progress, and participated in the scheduling of the work and inspection of the work.

4.      That at all relevant times, Defendant, TRISTAR, had a duty to exercise reasonable care in its build, planning, and construction of the subject "delivery station" located in Edwardsville, Illinois

Exhibit A

5.      Notwithstanding its duties, at said time and place, Defendant, TRISTAR, by and through its agents, servants and employees, was then and there guilty of one or more of the following careless and negligent acts and/or omissions:

a.      Built and/or constructed the subject "delivery station" without a basement or actual shelter that could provide shelter when Defendant knew that Edwardsville, Illinois was prone to inclement weather including but not limited to tornadoes;

b.      Built and/or constructed the subject "delivery station" without a "safe room" that could provide shelter when Defendant knew that Edwardsville, Illinois was prone to inclement weather including but not limited to tornadoes;

c.      Failed to recommend that the subject "delivery station" be built with a basement shelter, shelter or "safe room" that could provide shelter when Defendant knew that Edwardsville, Illinois was prone to inclement, severe weather and/or tornadoes;

d.      Built and/or constructed the subject "delivery station" in a "tilt-up" wall construction manner when Defendant knew or should have known that this manner of construction causes walls to fall when struck with high winds and knew that Edwardsville, Illinois was prone to inclement, severe weather and tornadoes;

e.      Failed to adequately build the subject "delivery station" in a manner to prevent walls from collapsing and the roof from separating when struck with high winds when Defendant knew that Edwardsville, Illinois was prone to inclement, severe weather and tornadoes;

f.      Failed to build the subject "delivery station" pursuant to all local, state, and federal codes that prevented structural collapse due to inclement weather;

g.      Failed to provide a warehouse that was built in compliance with International Building Code Section 1604;

h.      Was otherwise careless and negligent.

6.      As a direct and proximate cause of one or more of the aforementioned careless negligent acts and/or omissions of Defendant, the Plaintiff's decedent, AUSTIN McEWEN, suffered serious injuries that resulted in his death.

Exhibit A

7.     At the time of decedent's death, AUSTIN McEWEN, left surviving a mother, Alice McEwen, and father, Randy McEwen, who have and will continue to suffer damages of a personal, pecuniary, and non-pecuniary nature, including great loss of society and companionship of decedent, AUSTIN McEWEN.

8.     Plaintiff, ALICE McEWEN, has been duly appointed Independent Administrator of the Estate of AUSTIN McEWEN, deceased, and brings this action pursuant to the Wrongful Death Act of Illinois, 740 ILCS 180/1 et. seq.

WHEREFORE, Plaintiff, ALICE McEWEN, as Independent Administrator of the Estate of AUSTIN McEWEN, deceased, prays for judgment against Defendant, TRISTAR PROPERTY ASSOCIATES, LLC, in an amount in excess of Fifty-Thousand Dollars ($50,000.00).

## COUNT VIII: SURVIVAL ACT: NEGLIGENCE: TRISTAR PROPERTY ASSOCIATES, LLC

1.     Plaintiff re-alleges Paragraphs 1-5 of Count VII for Paragraph 1 of Count VIII.

2.     As a direct and proximate cause of one or more of the aforementioned careless negligent acts and/or omissions of Defendant, the Plaintiff's decedent, AUSTIN McEWEN, suffered serious injuries of a personal and pecuniary nature, including but not limited to pain and suffering, and would have been entitled to recover for these damages had he not died from Defendant's conduct.

3.     Plaintiff, ALICE McEWEN, has been duly appointed Independent Administrator of the Estate of AUSTIN McEWEN, deceased, and brings this action pursuant to the Survival Act at 755 ILCS 5/27-6.

WHEREFORE, Plaintiff, ALICE McEWEN, as Independent Administrator of the Estate of AUSTIN McEWEN, deceased, prays for judgment against Defendant, TRISTAR PROPERTY ASSOCIATES, LLC, in an amount in excess of Fifty-Thousand Dollars ($50,000.00).

Exhibit A

## COUNT IX: WRONGFUL DEATH: STOCK & ASSOCIATES CONSULTING ENGINEERS, INC.

1.      On and before December 10, 2021, Defendant, STOCK, was a civil engineering company that provided engineering services towards the build of the subject delivery station in Edwardsville, Illinois.

builds commercial retail buildings, warehouses, office buildings, and institutions.

2.      Prior to December 10, 2021, Defendant, STOCK, built, developed, provided engineering services, and/or constructed the Amazon "delivery station" known as "DLI4" located in Edwardsville, Illinois. Defendant, STOCK, was under contract with Defendants, AMAZON INC. AMAZON LOGISTICS and/or CONTEGRA, to assist in the build, develop and/or construct the subject warehouse.

3.      Prior to December 10, 2021 and during all phases of the construction of the subject warehouse, Defendant, STOCK, individually and through its agents, servants, and/or employees was present during the course of such construction and Defendant, STOCK, participated, orchestrated, managed, supervised, controlled, directed, and/or was in charge of the work being done at the aforesaid project including but not limited to directing the means, methods and operative details of the work being done by on-site workers, including but not limited to workers of Defendant, STOCK. The Defendant, STOCK, individually and through its agents, servants, and/or employees participated in coordinating the work being done and designated various work methods, had a responsibility to maintain a safe premise for all workers, maintained and checked work progress, and participated in the scheduling of the work and inspection of the work.

4.      That at all relevant times, Defendant, STOCK, had a duty to exercise reasonable care in its build, planning, and construction of the subject "delivery station" located in Edwardsville, Illinois

24

Exhibit A

5.      Notwithstanding its duties, at said time and place, Defendant, STOCK, by and through its agents, servants and employees, was then and there guilty of one or more of the following careless and negligent acts and/or omissions:

a.      Built and/or constructed the subject "delivery station" without a basement or actual shelter that could provide shelter when Defendant knew that Edwardsville, Illinois was prone to inclement weather including but not limited to tornadoes;

b.      Built and/or constructed the subject "delivery station" without a "safe room" that could provide shelter when Defendant knew that Edwardsville, Illinois was prone to inclement weather including but not limited to tornadoes;

c.      Failed to recommend that the subject "delivery station" be built with a basement shelter, shelter or "safe room" that could provide shelter when Defendant knew that Edwardsville, Illinois was prone to inclement, severe weather and/or tornadoes;

d.      Built and/or constructed the subject "delivery station" in a "tilt-up" wall construction manner when Defendant knew or should have known that this manner of construction causes walls to fall when struck with high winds and knew that Edwardsville, Illinois was  prone  to  inclement,  severe weather and tornadoes;

e.      Failed to adequately build the subject "delivery station" in a manner to prevent walls from collapsing and the roof from separating when struck with high winds when Defendant knew that Edwardsville, Illinois was prone to inclement, severe weather and tornadoes;

f.      Failed to build the subject "delivery station" pursuant to all local, state, and federal codes that prevented structural collapse due to inclement weather;

g.      Failed to provide a warehouse that was built in compliance with International Building Code Section 1604;

h.      Was otherwise careless and negligent.

6.      As a direct and proximate cause of one or more of the aforementioned careless negligent acts and/or omissions of Defendant, the Plaintiff's decedent, AUSTIN McEWEN, suffered serious injuries that resulted in his death.

Exhibit A

7.      At the time of decedent's death, AUSTIN McEWEN, left surviving a mother, Alice McEwen, and father, Randy McEwen, who have and will continue to suffer damages of a personal, pecuniary, and non-pecuniary nature, including great loss of society and companionship of decedent, AUSTIN McEWEN.

8.      Plaintiff, ALICE McEWEN, has been duly appointed Independent Administrator of the Estate of AUSTIN McEWEN, deceased, and brings this action pursuant to the Wrongful Death Act of Illinois, 740 ILCS 180/1 et. seq.

WHEREFORE, Plaintiff, ALICE McEWEN, as Special Administrator of the Estate of AUSTIN McEWEN, deceased, prays for judgment against Defendant, STOCK & ASSOCIATES CONSULTING ENGINEERS, INC., in an amount in excess of Fifty-Thousand Dollars ($50,000.00).

## COUNT X: SURVIVAL ACT: NEGLIGENCE: STOCK & ASSOCIATES CONSULTING ENGINEERS, INC.

1.      Plaintiff re-alleges Paragraphs 1-5 of Count IX for Paragraph 1 of Count X

2.      As a direct and proximate cause of one or more of the aforementioned careless negligent acts and/or omissions of Defendant, the Plaintiff's decedent, AUSTIN McEWEN, suffered serious injuries of a personal and pecuniary nature, including but not limited to pain and suffering, and would have been entitled to recover for these damages had he not died from Defendant's conduct.

3.      Plaintiff, ALICE McEWEN, has been duly appointed Independent Administrator of the Estate of AUSTIN McEWEN, deceased, and brings this action pursuant to the Survival Act at 755 ILCS 5/27-6.

WHEREFORE, Plaintiff, ALICE McEWEN, as Independent Administrator of the Estate of AUSTIN McEWEN, deceased, prays for judgment against Defendant, STOCK &

Exhibit A

ASSOCIATES CONSULTING ENGINEERS, INC., in an amount in excess of Fifty-Thousand Dollars ($50,000.00).

### COUNT XI: WRONGFUL DEATH: GRAY DESIGN GROUP, INC.

1.      On and before December 10, 2021, Defendant, GRAY, was an architectural company that provided architectural services towards the build of the subject delivery station in Edwardsville, Illinois.

2.      Prior to December 10, 2021, Defendant, GRAY, built, developed, provided architectural services, and/or constructed the Amazon "delivery station" known as "DLI4" located in Edwardsville, Illinois. Defendant, GRAY, was under contract with Defendants, AMAZON INC. AMAZON LOGISTICS, TRISTAR and/or CONTEGRA, to assist in the build, develop and/or construct the subject warehouse.

3.      Prior to December 10, 2021 and during all phases of the construction of the subject warehouse, Defendant, GRAY, individually and through its agents, servants, and/or employees was present during the course of such construction and Defendant, GRAY, participated, orchestrated, managed, supervised, controlled, directed, and/or was in charge of the work being done at the aforesaid project including but not limited to directing the means, methods and operative details of the work being done by on-site workers, including but not limited to workers of Defendant, GRAY. The Defendant, GRAY, individually and through its agents, servants, and/or employees participated in coordinating the work being done and designated various work methods, had a responsibility to maintain a safe premise for all workers, maintained and checked work progress, and participated in the scheduling of the work and inspection of the work.

Exhibit A

4.      That at all relevant times, Defendant, GRAY, had a duty to exercise reasonable care in its build, planning, design, specifications, and construction of the subject "delivery station" located in Edwardsville, Illinois

5.      Notwithstanding its duties, at said time and place, Defendant, GRAY, by and through its agents, servants and employees, was then and there guilty of one or more of the following careless and negligent acts and/or omissions:

a.      Built and/or constructed the subject "delivery station" without a basement or actual shelter that could provide shelter when Defendant knew that Edwardsville, Illinois was prone to inclement weather including but not limited to tornadoes;

b.      Built and/or constructed the subject "delivery station" without a "safe room" that could provide shelter when Defendant knew that Edwardsville, Illinois was prone to inclement weather including but not limited to tornadoes;

c.      Failed to recommend that the subject "delivery station" be built with a basement shelter, shelter or "safe room" that could provide shelter when Defendant knew that Edwardsville, Illinois was prone to inclement, severe weather and/or tornadoes;

d.      Built and/or constructed the subject "delivery station" in a "tilt-up" wall construction manner when Defendant knew or should have known that this manner of construction causes walls to fall when struck with high winds and knew that Edwardsville, Illinois was prone to inclement, severe weather and tornadoes;

e.      Failed to adequately build the subject "delivery station" in a manner to prevent walls from collapsing and the roof from separating when struck with high winds when Defendant knew that Edwardsville, Illinois was prone to inclement, severe weather and tornadoes;

f.      Failed to build the subject "delivery station" pursuant to all local, state, and federal codes that prevented structural collapse due to inclement weather;

g.      Failed to provide a warehouse that was built in compliance with International Building Code Section 1604;

h.      Was otherwise careless and negligent.

28

Exhibit A

6.　　As a direct and proximate cause of one or more of the aforementioned careless negligent acts and/or omissions of Defendant, the Plaintiff's decedent, AUSTIN McEWEN, suffered serious injuries that resulted in his death.

7.　　At the time of decedent's death, AUSTIN McEWEN, left surviving a mother, Alice McEwen, and father, Randy McEwen, who have and will continue to suffer damages of a personal, pecuniary, and non-pecuniary nature, including great loss of society and companionship of decedent, AUSTIN McEWEN.

8.　　Plaintiff, ALICE McEWEN, has been duly appointed Independent Administrator of the Estate of AUSTIN McEWEN, deceased, and brings this action pursuant to the Wrongful Death Act of Illinois, 740 ILCS 180/1 et. seq.

WHEREFORE, Plaintiff, ALICE McEWEN, as Special Administrator of the Estate of AUSTIN McEWEN, deceased, prays for judgment against Defendant, GRAY DESIGN GROUP, INC., in an amount in excess of Fifty-Thousand Dollars ($50,000.00).

## COUNT XII: SURVIVAL ACT: NEGLIGENCE: GRAY DESIGN GROUP, INC.

1.　　Plaintiff re-alleges Paragraphs 1-5 of Count XI for Paragraph 1 of Count XII.

2.　　As a direct and proximate cause of one or more of the aforementioned careless negligent acts and/or omissions of Defendant, the Plaintiff's decedent, AUSTIN McEWEN, suffered serious injuries of a personal and pecuniary nature, including but not limited to pain and suffering, and would have been entitled to recover for these damages had he not died from Defendant's conduct.

3.　　Plaintiff, ALICE McEWEN, has been duly appointed Independent Administrator of the Estate of AUSTIN McEWEN, deceased, and brings this action pursuant to the Survival Act at 755 ILCS 5/27-6.

Exhibit A

WHEREFORE, Plaintiff, ALICE McEWEN, as Independent Administrator of the Estate of AUSTIN McEWEN, deceased, prays for judgment against Defendant, GRAY DESIGN GROUP, INC., in an amount in excess of Fifty-Thousand Dollars ($50,000.00).

## COUNT XIII: WRONGFUL DEATH: NEGLIGENCE: MCNEALY ENGINEERING, INC.

1.      On and before December 10, 2021, Defendant, MCNEALY, was a structural engineering firm based in St. Louis, Missouri that provides architectural restoration, structural engineering, and architectural engineering services including such services for the subject "delivery station" known as DLI4 in Edwardsville, Illinois.

2.      Prior to December 10, 2021, Defendant, MCNEALY, built, developed, provided architectural services, structural engineering services, and/or constructed the Amazon "delivery station" known as "DLI4" located in Edwardsville, Illinois. Defendant, MCNEALY, was under contract with Defendants, AMAZON INC. AMAZON LOGISTICS, TRISTAR, STOCK, GRAY and/or CONTEGRA, to assist in the build, develop and/or construct the subject warehouse.

3.      Prior to December 10, 2021 and during all phases of the construction of the subject warehouse, Defendant, MCNEALY, individually and through its agents, servants, and/or employees was present during the course of such construction and Defendant, MCNEALY, participated, orchestrated, managed, supervised, controlled, directed, and/or was in charge of the work being done at the aforesaid project including but not limited to directing the means, methods and operative details of the work being done by on-site workers, including but not limited to workers of Defendant, MCENALY. The Defendant, MCNEALY, individually and through its agents, servants, and/or employees participated in coordinating the work being done and designated various work methods, had a responsibility to maintain a safe premise for all workers,

Exhibit A

maintained and checked work progress, and participated in the scheduling of the work and inspection of the work.

4.      That at all relevant times, Defendant, MCNEALY, had a duty to exercise reasonable care in its build, planning, design, specifications, and construction of the subject "delivery station" located in Edwardsville, Illinois

5.      Notwithstanding its duties, at said time and place, Defendant, MCNEALY, by and through its agents, servants and employees, was then and there guilty of one or more of the following careless and negligent acts and/or omissions:

a.      Built and/or constructed the subject "delivery station" without a basement or actual shelter that could provide shelter when Defendant knew that Edwardsville, Illinois was prone to inclement weather including but not limited to tornadoes;

b.      Built and/or constructed the subject "delivery station" without a "safe room" that could provide shelter when Defendant knew that Edwardsville, Illinois was prone to inclement weather including but not limited to tornadoes;

c.      Failed to recommend that the subject "delivery station" be built with a basement shelter, shelter or "safe room" that could provide shelter when Defendant knew that Edwardsville, Illinois was prone to inclement, severe weather and/or tornadoes;

d.      Built and/or constructed the subject "delivery station" in a "tilt-up" wall construction manner when Defendant knew or should have known that this manner of construction causes walls to fall when struck with high winds and knew that Edwardsville, Illinois was  prone  to  inclement,  severe weather and tornadoes;

e.      Failed to adequately build the subject "delivery station" in a manner to prevent walls from collapsing and the roof from separating when struck with high winds when Defendant knew that Edwardsville, Illinois was prone to inclement, severe weather and tornadoes;

f.      Failed to build the subject "delivery station" pursuant to all local, state, and federal codes that prevented structural collapse due to inclement weather;

31

Exhibit A

g.      Failed to provide a warehouse that was built in compliance with International Building Code Section 1604;

h.      Was otherwise careless and negligent.

6.      As a direct and proximate cause of one or more of the aforementioned careless negligent acts and/or omissions of Defendant, the Plaintiff's decedent, AUSTIN McEWEN, suffered serious injuries that resulted in his death.

7.      At the time of decedent's death, AUSTIN McEWEN, left surviving a mother, Alice McEwen, and father, Randy McEwen, who have and will continue to suffer damages of a personal, pecuniary, and non-pecuniary nature, including great loss of society and companionship of decedent, AUSTIN McEWEN.

8.      Plaintiff, ALICE McEWEN, has been duly appointed Independent Administrator of the Estate of AUSTIN McEWEN, deceased, and brings this action pursuant to the Wrongful Death Act of Illinois, 740 ILCS 180/1 et. seq.

WHEREFORE, Plaintiff, ALICE McEWEN, as Special Administrator of the Estate of AUSTIN McEWEN, deceased, prays for judgment against Defendant, MCNEALY ENGINEERING, INC., in an amount in excess of Fifty-Thousand Dollars ($50,000.00).

## COUNT XIV: SURVIVAL ACT: NEGLIGENCE: MCNEALY ENGINEERING, INC.

1.      Plaintiff re-alleges Paragraphs 1-5 of Count XIII for Paragraph 1 of Count XIV.

2.      As a direct and proximate cause of one or more of the aforementioned careless negligent acts and/or omissions of Defendant, the Plaintiff's decedent, AUSTIN McEWEN, suffered serious injuries of a personal and pecuniary nature, including but not limited to pain and suffering, and would have been entitled to recover for these damages had he not died from Defendant's conduct.

Exhibit A

3.      Plaintiff, ALICE McEWEN, has been duly appointed Independent Administrator of the Estate of AUSTIN McEWEN, deceased, and brings this action pursuant to the Survival Act at 755 ILCS 5/27-6.

WHEREFORE, Plaintiff, ALICE McEWEN, as Independent Administrator of the Estate of AUSTIN McEWEN, deceased, prays for judgment against Defendant, MCNEALY ENGINEERING, INC., in an amount in excess of Fifty-Thousand Dollars ($50,000.00).


*/s/ Jack J. Casciato*

Jack J. Casciato, One of the attorneys for Plaintiff


*/s/ John Malec*
John Malec, One of the attorneys for Plaintiff


Robert A. Clifford
Jack J. Casciato
CLIFFORD LAW OFFICES
120 North LaSalle Street, 36th Floor
Chicago, Illinois 60602
T: (312) 899-9090
RAC@cliffordlaw.com
JJC@cliffordlaw.com
Firm ID: 32640


John Malec
Martin, Malec & Leopold, P.C.
1007 Olive St., 5th Floor
St. Louis, MO 63101
(314) 231-3323
jmalec@mmllawyers.com
Bar #6184109

Exhibit A