# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| AXIS SURPLUS INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) Case No. 4:22-cv-00328 |
| | ) |
| vs. | ) |
| | ) |
| TRISTAR COMPANIES, LLC, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT TRISTAR COMPANIES, LLC'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

The present case involves Defendant TriStar Companies, LLC's ("TriStar") claim for coverage in several pending and threatened lawsuits ("Underlying Claims") involving personal injury and deaths arising from the tornado strike on an Amazon distribution center in Edwardsville, Illinois on December 10, 2021.

The facts are not in dispute. The parties agree to the language of the Policy. The parties agree that TriStar is a named insured under the Policy. And the parties agree to the allegations contained in the Underlying Claims. The issue left is simply whether those allegations trigger coverage under the language of the Policy, an issue of law for this Court's determination. As set forth below, the allegations in the Underlying Claims clearly trigger coverage.

## BACKGROUND

TriStar is a developer of industrial and multifamily real estate that was involved in the development of a warehouse located at 3077 Gateway Commerce Center Drive South,

Edwardsville, Illinois.  TriStar's involvement with the warehouse ceased in 2020, and, ultimately the warehouse became a distribution center for Amazon.[1]

On or about December 10, 2021, a tornado struck Edwardsville, Illinois and caused damage to the distribution center, causing several injuries and deaths of workers located therein. Several of those injured and the survivors of decedents have filed lawsuits in Illinois alleging negligence and wrongful death.  Those claims include the claims brought in the lawsuits captioned *McEwen v. Amazon.com et al.*, Cause No. 2022LA000055 ("McEwen Action"), *January v. Amazon.com et al.*, Cause No. 2022-LA-00511 ("January Action"), and *Hickman v. Amazon.com et al.*, Cause No. 2022-LA-00510 ("Hickman Action").  See SUMF at ¶¶ 6-8. TriStar was named a defendant in each of the McEwen Acton, January Action, and Hickman Action.  *Id.*  Additionally, TriStar received notice of claims being asserted related to the alleged wrongful deaths of Clayton Cope and Larry Virden (the Cope and Virden Claims") (collectively, the McEwen Action, January Action, Hickman Action, and the Cope and Virden Claims are referred to as the "Underlying Claims").  See SUMF at ¶ 9.  The Underlying Claims arise out of injuries and deaths allegedly sustained at the Amazon Warehouse located at 3077 Gateway Commerce Center Drive South, Edwardsville, Illinois.  See SUMF at ¶¶ 6-9; ECF 19-1, ECF 19-2, and ECF 19-3.

On December 10, 2021, TriStar was a named insured under the commercial general policy no. ESC90071 ("Policy") issued by Axis Surplus Insurance Company ("Axis").  *See* SUMF ¶¶ 1, 3.  Following notice of the Underlying Claims, TriStar provided notice to Axis and demanded coverage under the Policy.  *See* SUMF at ¶ 22.  Axis denied coverage and filed the instant action.  *See* SUMF at ¶ 23.  Axis' Amended Complaint alleges two counts:  (1) Count I

---

[1] These background facts include nonmaterial facts that are provided for background only but are not material to this summary judgment motion.  All material facts are cited with support to the Statement of Uncontroverted Material Facts "SUMF" filed contemporaneously herewith.

seeking a declaratory judgment that the Policy affords no coverage for TriStar for the Underlying Claims; and (2) Count II seeking a declaratory judgment that, even if there is coverage under the Policy, that coverage is in excess to any other applicable insurance policies providing coverage to TriStar.  *See* ECF 19.  TriStar filed its Counterclaim, seeking declaratory relief that it is entitled to coverage under the Policy for the Underlying Claims (Count I) and breach of contract for damages incurred in defending the Underlying Claims, including vexatious refusal to defend by Axis (Count II).  *See* ECF 26.

TriStar brings the instant motion for summary judgment, seeking judgment against Axis on its Amended Complaint and also seeking judgment in favor of TriStar on Count of the Counterclaim.

## **STANDARD**

The standard for summary judgment is well settled and requires the moving party to establish the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law on those facts.  *St. Anthony's Medical Center v. National Service Industries, Inc.*, 2011 WL 7111563 (E.D. Mo. 2011).  In order to avoid summary judgment, a nonmoving party is not entitled to rest on allegations in pleadings but must set forth specific facts showing there is a genuine issue for trial.  *Id*. at * 4.  "A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor."  *Id*.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.*

3

## **ARGUMENT**

In insurance coverage actions involving diversity of citizenship, state law controls the analysis of the policy. *Continental Cas. Co. v. Advance Terrazzo & Tile Co., Inc.*, 462 F.3d 1002, 1007 (8th Cir. 2006). Here, the Policy at issue was issued in Missouri to a Missouri resident insured and states that it provides coverage under Missouri Law.

Under Missouri law, the interpretation of an insurance policy is a question of law. *Interstate Bakeries Corp. v. OneBeacon Ins. Co.*, 686 F.3d 539, 542 (8th Cir. 2012). "The duty to defend is determined by comparing the language of the insurance policy with the allegations in the complaint." *Id*. "Whether an underlying petition has alleged a claim that is covered by the terms of the insurance policy is a legal question." *Shelter Mut. Ins. Co. v. Ballew*, 203 S.W.3d 789, 792 (Mo. App. W.D. 2006). If the complaint alleges any facts that potentially give rise to a claim within the policy's coverage, the insurer has a duty to defend. *Interstate Bakeries*, 686 F.3d at 542. This is true even if the underlying suit also includes uninsured claims or claims beyond coverage. *Id*. The burden to prove coverage lies with the insured while the burden to show any exclusion applies is on the insurer. *Id*. at 543.

When construing an insurance policy, courts apply the meaning attached by an ordinary person of average understanding and must resolve ambiguities in favor of the insured. *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. banc 2010). This rule "is applied more rigorously in insurance contracts than in other contracts in Missouri. *Id*. at 509-10 (internal quotations omitted). In giving effect to these rules, the plain and ordinary meaning of an insurance policy refers to the meaning "as understood by lay persons buying insurance, consistent with the reasonable expectations, objectives, and intent of the parties." *Exotic Motors v. Zurich American Insurance*

*Co.*, 597 S.W.3d 767, 770 (Mo. App. E.D 2020). The Courts' inquiry is not to arrive at a technical meaning of a term in a policy. *Id*. at 772.

In the instant action, TriStar seeks judgment as a matter of law on all claims for declaratory relief in this matter – Counts I and II of Axis' Amended Complaint and Count I of TriStar's Counterclaim. These claims represent competing claims regarding coverage of the Underlying Claims. Because of the nature of the competing claims, there is no dispute in this case that the claims are ripe and that there is no adequate remedy at law. The only remaining issue is to determine, as a matter of law, whether the Policy affords coverage to the Underlying Claims.

**I.     TriStar Is Covered Under The Policy For The Underlying Claims (Count I of Amended Complaint and Count I of Counterclaim)**

**A. Coverage Under Insuring Agreement**

At the outset, there does not appear to be any serious dispute in this case that, absent the Policy exclusions and endorsements discussed below, coverage would be afforded for TriStar. Indeed, Axis offers no claim in its Amended Complaint or in defense of TriStar's Counterclaim to suggest that the Policy would not generally cover the claims in the Underlying Lawsuit. Nevertheless, because it is TriStar's burden to show coverage under the Policy, it will briefly do so below.

The Policy's general liability coverage provides that Axis "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies…this insurance applies to 'bodily injury' and 'property damage' only if:

(1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory';

5

    (2) The 'bodily injury' or 'property damage' occurs during the policy period; and

    (3) Prior to the policy period, no insured….knew that the 'bodily injury' or 'property damage had occurred.'

*See* SUMF at ¶ 10.  In summation, in order for there to be coverage for the Underlying Claims, TriStar must show the following:

  (1) TriStar is an insured under the Policy;

  (2) The Underlying Claims contain allegations against TriStar for 'bodily injury';

  (3) The allegations of bodily injury were caused by an occurrence in the 'coverage territory';

  (4) The bodily injury occurred during the policy period; and

  (5) Prior to the policy period, no insured knew that the bodily injury had occurred.

On each of these issues, there is no real dispute that the Underlying Claims trigger coverage.

    **1. TriStar Is An Insured**

The Policy identifies TriStar Property Associates, LLC as a named insured.  *See* SUMF at ¶¶ 5.  TriStar was formerly known as TriStar Property Associates, LLC.  *See* SUMF at ¶ 2.  Accordingly, TriStar is the same entity as TriStar Property Associates, LLC and is a named insured under the Policy.

    **2. The Underlying Claims Contain Allegations Of Bodily Injury Against TriStar**

"Bodily Injury" is defined by the Policy to be "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."  *See* SUMF at ¶ 11, ECF 19-4, p. 28.  Each of the Underlying Claims contain allegations that TriStar caused bodily injury.

6

With respect to the McEwen Action, the underlying complaint alleges that TriStar's actions resulted in serious injuries that resulted in the decedent's death. *See* SUMF at ¶ 6, ECF 19-1 at p. 11, ¶ 22. Similarly, with respect to the January Action, the underlying complaint alleges that TriStar's actions resulted in the death of the decedent, specifically alleging death "as a result of his thoracic cavity being crushed." *See* SUMF at ¶ 7, ECF 19-2 at p. 11, ¶ 28. The underlying complaint in Hickman alleges that TriStar's negligence caused Plaintiffs "life-altering injuries" and "devastating physical and emotional injuries." *See* SUMF at ¶ 8, ECF 19-3 at p. 14, ¶ 41, p. 23, ¶ 10. Lastly, the Cope and Virden claims have alleged wrongful death of individuals. *See* SUMF at ¶ 9. These are clearly claims for bodily injury as defined in the Policy and there appears to be no dispute on this issue, as even Axis has acknowledged that these are all claims for "wrongful deaths or injuries." *See* Amended Complaint at ¶ 2, ECF 19.

### 3. The Underlying Claims Allege The Bodily Injury Was Caused By An Occurrence In The Coverage Territory

The Policy defines an "occurrence" to be an "accident." *See* SUMF at ¶ 12, ECF 19-4 at p. 30. "[W]hen a liability policy defines 'occurrence' as meaning 'accident' Missouri courts consider this to mean injury caused by the negligence of the insured." *Wood v. Safeco Ins. Co. of America*, 980 S.W.2d 43, 49 (Mo. App. E.D. 1998). Here, all of the Underlying Claims allege the injuries were caused by the negligence of TriStar. *See* SUMF 6-9; ECF 19-1 at p. 21; ECF 19-2 at p. 20; ECF 19-3 at p. 21; Amended Complaint, ECF 19, at ¶ 1, 15. This is not in dispute. Also, the Policy's Coverage Territory is defined to include "[t]he United States of America." *See* SUMF at ¶ 13. Because the occurrences were alleged to have occurred in Edwardsville, Illinois, the occurrences took place in the Coverage Territory."

### 4. The Allegations of Bodily Injury Occurred During The Policy Period

The Policy Period was in effect from June 1, 2021 through June 1, 2022.  *See* SUMF at ¶ 3; ECF 19-4 at p. 9.  The Underlying Claims all occurred on or about December 10, 2021, within the Policy Period.  *See* Amended Complaint, ECF 19 at ¶ 2.

### 5. No Insured Knew About the Bodily Injury Prior To The Policy Period

Here, the Policy Period began on June 1, 2021, prior to the alleged injuries in the Underlying Claims, which occurred on December 10, 2021.  Thus, it is impossible for any insured to have known about the bodily injury prior to the Policy Period.

## B. No Exclusions Apply

As set forth above, the Policy's insuring agreement covers the alleged losses in the Underlying Claims.  As a result, the Policy affords TriStar coverage unless an exclusion applies.  This is the core issue in the case, upon which Axis' Amended Complaint relies.  Axis relies on several policy exclusions it contends results in no coverage for TriStar.  The burden to show these exclusions is on Axis.  Nevertheless, each is considered below and shown not to apply, as a matter of law, based on the undisputed facts in this case.

### 1. Designated Premises Project Or Operation Endorsement

The Policy contains a Designated Premises Project or Operation Endorsement that states, in pertinent part, that "[t]his insurance applies to 'bodily injury' and 'property damage' caused by an 'occurrence' that takes place in the 'coverage territory' only if…[t]he 'bodily injury' or 'property damage' (a) occurs on the premises shown in the Schedule."  *See* SUMF at ¶ 14; ECF 19-44 at p. 64.  Here, it is undisputed that the Underlying Claims occurred at the Amazon Distribution Center located at 3077 Gateway Commerce Center Drive South, Edwardsville,

Illinois, as shown in the google maps illustration attached as Exhibit A.[2] *See* SUMF at ¶ 15. The issue is thus whether this location appears on the Policy's Schedule.

The Policy's Schedule includes the following locations:

- Hwy 270/255 & Hwy 111, Madison, IL 62060 and

- E-255, W. Sand Rd., N. 1-270, S. Hwy 270-255 + Hwy 111, Edwardsville, IL 62025

*See* SUMF at ¶ 16; ECF 19-4 at p. 34, 81. The above locations are all set forth in the attached google maps as Exhibit A. As shown, the subject address of 3077 Gateway Commerce Center Drive South, Edwardsville, Illinois, is squarely in the middle of the generally-described roads and highways in the Schedule. *See* SUMF at ¶ 17. This location is therefore included in the plain language of the Policy's Schedule. Accordingly, this endorsement/exclusion does not apply to exclude coverage for the Underlying Claims.

### 2. Real Estate Development Activities Exclusion

The Real Estate Development Activities Exclusion states, in pertinent part, that "[t]his insurance does not apply to 'bodily injury'….arising out of, resulting from, related to, or in any way connected to 'real estate development activities…'" *See* SUMF at ¶ 18; ECF 19-4 at p. 48. "Real Estate activities" is defined to "mean the design, site preparation, construction, marketing or sales of any real estate owned by any 'insured.'" *See* SUMF at ¶ 19. Accordingly, this exclusion only applies if TriStar owned the subject property – 3077 Gateway Commerce Center Drive South, Edwardsville, Illinois. Here, the undisputed facts show that TriStar did not own the property. *See* SUMF at 24.

---

[2] This Court may take judicial notice of google maps. *See United States v. Nettles*, 2021 WL 3131658 at n. 9 (E.D. Mo. 2021).

9

### 3. Completed Operations Exclusion

Lastly, the "Exclusion – Products-Completed Operations Hazard" states that "[t]his insurance does not apply to 'bodily injury' included within the 'products-completed operations hazard." *See* SUMF at ¶ 20; ECF 19-4 at p. 59. Thus, if the bodily injury alleged in the Underlying Claims was included within the "products-completed operations hazard" then TriStar is not afforded coverage. The Policy expressly defines "Products-completed operations hazard" to ***exclude*** bodily injury arising out of "[t]he transportation of property." *See* SUMF at ¶ 21; ECF 19-4 at p. 30. In other words, if the alleged bodily injury arises out of the transportation of property, it will not be excluded as a Products-completed operations hazard.

Again, the allegations in the Underlying Claims are not in dispute, and each of them allege injuries arising from an Amazon "delivery station." As set forth in the McEwen Action:

> These 'fulfillment centers' and/or 'delivery stations' create a vast network for Defendant, Amazon, Inc., to deliver goods to customers in using these centers to store, ship, and deliver goods. On December 10, 2021 and at all relevant times, Defendant, Amazon, Inc., maintained a warehouse or 'delivery station' known as 'DL14' located in Edwardsville, Illinois. In addition, on December 10, 2021, and at all relevant times, Defendant, Amazon Inc., utilized a wide range of independently contracted drivers and delivery carriers known as Delivery Service Partners to drive, haul, and make deliveries for Defendant, Amazon Inc.

*See* SUMF at ¶ 6; ECF 19-1 at ¶ 1, 2. The other Underlying Claims contain similar allegations. *See* ECF 19-2 at p.2-3, ¶¶ 7-9; 19-3 at p. 2-3, ¶¶ 7-9. More importantly, in all of the Underlying Claims, the alleged injuries and wrongful deaths were suffered by individuals who were acting within their employment as drivers to drive Amazon commercial vehicles and make deliveries on behalf of Amazon at a location that existed for the purpose of the transportation of property. *See* ECF 19-1 at ¶ 8-9; ECF 19-2 at p. 5-11, ¶¶ 2, 7, 8, 12, 15-17; ECF 19-3 at p. 6-14, ¶¶ 2, 7, 8, 15, 18, 20, 25.

These allegations in the Underlying claims clearly allege injuries arising out of the decedents' and plaintiffs' transportation of property in their capacity as delivery drivers for Amazon. At the very least, these facts give rise to the potential for such coverage, thereby triggering the duty to defend. The fact that the injuries were sustained as a result of the delivery/transportation of property is apparent from the allegations in the Underlying Claims, which are premised on claims that it was the direct control of these individuals' deliveries that led to their injuries/deaths at a transportation hub. This exclusion does not apply.

## II. Count II of Amended Complaint Fails Because There Is No Other Insurance For TriStar

Count II of Axis' Amended Complaint seeks a declaratory judgment that, even if there is coverage under the Policy, such coverage should be only excess of other coverage for TriStar. However, the undisputed facts show that TriStar has no other insurance coverage, thereby making Count II moot and fails as a matter of law.[3]

## CONLCUSION

For the reasons set forth above, the Policy affords coverage to TriStar for the Underling Claims. Thus, judgment should be entered in favor of TriStar on Axis' Amended Complaint and partial judgment in favor of TriStar's Amended Counterclaim, leaving only the issue of breach of contract damages for Axis' failure to defend the Underlying Claims.

---

[3] Even if there were other insurance policies applying to TriStar, this would still not necessarily render Axis excess to those policies. If those other polices also have provisions purporting to be excess to other insurance policies, the Court would have to apportion the coverage between the two (or more) policies based on the limits of liability. *See Powell v. Home Indem. Co.*, 343 F.2d 856, 858-59 (8th Cir. 1965).

11

Respectfully submitted,

**BLITZ, BARDGETT & DEUTSCH, LC**

By: <u>/s/ *Christopher O. Bauman*</u>
Robert D. Blitz, #24387MO
Christopher O. Bauman, #52480MO
120 S. Central Ave., Ste. 1500
St. Louis, MO  63105
Telephone: (314) 863-1500
Facsimile: (314) 863-1877
Email: rblitz@bbdlc.com
Email: cbauman@bbdlc.com

*Attorneys for TriStar Companies, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 31, 2022, the foregoing was served via the Court's CM/ECF system on all counsel of record.

<u>*/s/ Christopher O. Bauman*</u>