IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| AXIS SURPLUS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | Cause No.: 22-cv-00328 |
| v. | ) | |
| | ) | Hon. Audrey G. Fleissig |
| TRISTAR COMPANIES, LLC | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

**MEMORANDUM IN SUPPORT OF AXIS SURPLUS INSURANCE COMPANY'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

<u>**TABLE OF CONTENTS**</u>

I.     INTRODUCTION ..................................................................................................... 1

II.    THE UNDISPUTED FACTS MATERIAL TO AXIS' MOTION ................................. 2

III.   THE AXIS POLICY AND THE UNDISPUTED MATERIAL FACTS
       ENTITLE AXIS TO SUMMARY JUDGMENT AS A MATTER OF LAW ................. 4

     A.  Legal Standards ............................................................................................. 4

     B.  TriStar Cannot Prove That The Claims Fall Within The Limited
        Grant Of Coverage Of The AXIS Policy ...................................................... 5

     C.  Four AXIS Policy Exclusions Each Preclude Coverage For The
        Amazon Warehouse Claims .......................................................................... 8

           1.  The Products-Completed Operations Exclusion ......................................... 8

           2.  The Classification Exclusion ..................................................................... 10

           3.  The Professional Services Exclusion ......................................................... 11

           4.  The Real Estate Development Activities Exclusion ................................... 13

CONCLUSION ................................................................................................................. 14

# **TABLE OF AUTHORITIES**

Abco Tank & Manuf. Co. v. Federal Ins. Co.,
    550 S.W.2d 193 (Mo. 1977) ........................................................................... 9

Alcock v. Farmers Mut. Fire Ins. Co.,
    591 S.W.2d 126 (Mo. Ct. App. 1979)........................................................... 10

American Economy Ins. Co. v. Jackson,
    476 F.3d 620 (8th Cir. 2007) ........................................................................ 12

Brit UW Ltd. v. Hallister Property Development, LLC,
    6 F.Supp.3d 1321 (N.D. Ga. 2014) .............................................................. 10

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)........................................................................................ 5

Cincinnati Ins. Co. v. Intek Corp.,
    No. 4:08 CV1440, 2010 WL 716197 (E.D. Mo. Feb. 24, 2010) ................... 10

Cnty. of Scotland v. Missouri Public Entity Risk Management Fund,
    537 S.W.3d 358 (Mo Ct. App. 2017)............................................................. 5

Evanston Ins. Co. v. Heeder,
    Case No. 8:11-cv-776-T-24-TGW, 2011 WL 4715177 (M.D. Fla. Oct. 7, 2011)................. 11

Grennemann v. Columbia Ins. Group,
    931 S.W.2d 502 (Mo. Ct. App. 1996)........................................................... 10

Mendota Ins. Co. v. Lawson,
    456 S.W.3d 898 (Mo. Ct. App. 2015)............................................................. 4

National Union Fire Ins. Co. of Pittsburgh, Pa. v. Structural Systems Technology,
    756 F.Supp. 1232 (E.D. Mo. 1991)............................................................... 12

Northridge Village LP v. Travelers Indemnity Co. of Connecticut,
    No. 15-1947, 2017 WL 3776621 (E.D. Pa. Aug. 31, 2017) ........................... 13

Scottsdale Ins. Co. v. Aqueous Vapor, LLC,
    No. 4:20-00328-CV-RK, 2021 WL 123401 (W.D. Mo. Jan. 1, 2021) .............. 9

St. Paul Fire and Marine Ins. Co. v. Building Const. Enterprise, Inc.,
    484 F.Supp.2d 1004 (W.D. Mo. 2007) ........................................................... 4

State Farm Fire & Cas. Co. v. D.T.S.,
    867 S.W.2d 642 (Mo. Ct. App. 1993)............................................................. 4

Tonicstar Ltd. v. Lovegreen Turbine Services, Inc.,
    535 F.3d 790 (8th Cir. 2008) .......................................................................... 9

Trainwreck West Inc. v. Burlington Ins. Co.,
    235 S.W.3d 33 (Mo. Ct. App. 2007) ......................................................................... 5

Viacom, Inc. v. Transit Cas. Co.,
    138 S.W.3d 723 (Mo. 2004) .................................................................................... 4

Whirlpool Corp. v. Ritter,
    929 F.2d 1318 (8th Cir. 1991) ................................................................................. 4

Plaintiff and Counter-Defendant AXIS Surplus Insurance Company ("AXIS") submits this Memorandum in Support of its Motion for Summary Judgment on Count I of AXIS' Amended Complaint for Declaratory Judgment (ECF 19) and Counts I and II of TriStar Company, LLC's ("TriStar") Amended Counterclaim (ECF 26).

## I.    INTRODUCTION

AXIS issued a commercial general liability policy ("AXIS Policy") to Financial Processing Services ("Financial Processing") for a premium of $1,905. TriStar seeks coverage for wrongful death claims and suits arising from a tornado which struck an Amazon warehouse, in Edwardsville, Illinois, known as "DLI4" (the "Amazon Warehouse") on December 10, 2021. The claims and suits seek to hold TriStar liable for its failure to exercise reasonable care in developing and constructing the destroyed Amazon Warehouse. These, and potential future claims seeking recovery for injuries at the Amazon Warehouse on that same day, are collectively the "Amazon Warehouse Claims." The AXIS Policy does not afford coverage for the Amazon Warehouse Claims as a matter of law.

There are five separate reasons why the AXIS Policy affords no coverage to TriStar, any one of which is an independent basis for the entry of judgment in favor of AXIS. First, the AXIS Policy contains a Designated Premises Endorsement which limits coverage to occurrences at certain designated locations. The undisputed facts prove that the Amazon Warehouse is not a scheduled location and is therefore not covered by the AXIS Policy.

Second, the underlying claims are excluded by the AXIS Policy's "Products-Completed Operations" exclusion, because the alleged "bodily injur[ies]" occurred away from a place TriStar owned or rented and arises out of TriStar's completed "work."

Third, the AXIS Policy's Classification Exclusion limits coverage for otherwise covered occurrences at scheduled locations based on the designated AXIS classification code assigned to each scheduled location. Both locations TriStar contends encompass the location of the Amazon Warehouse are classified as "vacant land," and it is undisputed the deaths and injuries for which Amazon Warehouse Claims are asserted did not occur on "vacant land."

Fourth, the AXIS Policy's Designated Professional Services Exclusion precludes the Amazon Warehouse Claims because they arise out of the "professional services" of TriStar in developing the Amazon Warehouse.

Fifth, the AXIS Policy's Real Estate Development Exclusion precludes coverage because the Amazon Warehouse claims arise out of TriStar's "real estate development activities" in developing, building, and constructing the Amazon Warehouse.

AXIS is entitled to the entry summary judgment in its favor as a matter of law on each of the five grounds, yet if even one precludes coverage, AXIS' motion should be granted.

## II.     THE UNDISPUTED FACTS MATERIAL TO AXIS' MOTION

AXIS' Statement of Undisputed Material Facts ("SUMF") and accompanying documentary evidence establish the following facts.

TriStar seeks coverage for existing and any potential future claims arising from the destruction of an Amazon Warehouse located at 3077 Gateway Commerce Center Drive South in Edwardsville, Illinois. SUMF at ¶¶20-29. ████████████████

████████████████████████████████

████████████████████     ████████████

████████████████████████████████

████████████████████████████████

2

████████████████████████████████████

████████ TriStar's management activities contributed to the development of the Amazon Warehouse. *Id.* at ¶¶31-40.

TriStar admits that: (1) the address of the Amazon Warehouse is 3077 Gateway Commerce Center Drive South, Edwardsville, Illinois (*id.* at ¶29); (2) that Amazon Inc. took possession of the Amazon Warehouse on or about June 30, 2020 (*id.* at ¶42); and (3) it received its last payment under the Development Management Agreement on or about November 23, 2020 (*id.* at ¶43). The record additionally proves that TriStar did not own or rent the location of the Amazon Warehouse on June 1, 2021, the date the AXIS Policy incepted. *Id.* at ¶¶44-47.

AXIS issued the AXIS Policy to Financial Processing Services LLC for a total premium of $1,905, effective June 1, 2021 to June 1, 2022. *Id.* at ¶¶2-4. The scope of coverage under the AXIS Policy is limited by various terms, provisions, endorsements and exclusions, (*id.* at ¶¶5-19), including those set forth in the "INTRODUCTION" to this memorandum, pp.1 – 2 *supra*.

On December 10, 2021, a tornado struck an Amazon Warehouse causing a number of fatalities and an unknown number of injuries. *Id.* at ¶20. After the Amazon Warehouse's collapse, TriStar was served with several complaints (*McEwen*, *Hickman*, and *January*) and was notified of the Cope/Virden Claim, all of which allege TriStar was negligent in developing, building, and constructing the Amazon Warehouse. *Id.* at ¶¶21-28. TriStar provided notice of the *McEwen* Complaint to AXIS, and AXIS then filed this action seeking a declaration it owed no duty to defend or indemnify TriStar for any Amazon Warehouse Claim. Upon information and belief, TriStar will seek coverage under the AXIS Policy for future claims seeking recovery for injuries and deaths occurring at the Amazon Warehouse.

3

The parties exchanged and responded to document requests and interrogatories and fact discovery closed on October 14, 2022. Neither TriStar nor AXIS noticed any depositions. The coverage issues are now appropriate for resolution by summary judgment based on the terms of the AXIS Policy and the undisputed facts.

## Argument

## III.   THE AXIS POLICY AND THE UNDISPUTED MATERIAL FACTS ENTITLE AXIS TO SUMMARY JUDGMENT AS A MATTER OF LAW

There are five separate and independent bases for this Court to declare AXIS has neither a duty to defend nor a duty to indemnify TriStar for any Amazon Warehouse Claims.

### A.   Legal Standards

The interpretation of an insurance policy is a question of law to be decided by the court. *Mendota Ins. Co. v. Lawson*, 456 S.W.3d 898, 903 (Mo. Ct. App. 2015).[1] "The parties seeking to establish coverage under the insurance policy have the burden of proving that the claim is within the coverage afforded by the policy…even though [the insured is] denominated as defendants in a declaratory judgment action." *State Farm Fire & Cas. Co. v. D.T.S.*, 867 S.W.2d 642, 644 (Mo.

---

[1] There is no conflict between Missouri law and the laws of any other state with contacts to the AXIS Policy. Even if there was an outcome determinative conflict, Missouri law nevertheless would apply to the interpretation of the AXIS Policy. *Whirlpool Corp. v. Ritter*, 929 F.2d 1318, 1320 (8th Cir. 1991) (federal courts sitting in diversity apply the choice-of-law rules of the state in which it sits). Missouri follows Sections 188 and 193 of the Restatement (Second) of Conflict of Laws. *St. Paul Fire and Marine Ins. Co. v. Building Const. Enterprise, Inc.*, 484 F.Supp.2d 1004, 1006 (W.D. Mo. 2007). Under Section 188, in the event of a conflict of laws between contact states, the laws of the state with the most significant relationship to the transaction and the parties govern. *Viacom, Inc. v. Transit Cas. Co.*, 138 S.W.3d 723, 725 (Mo. 2004). The most significant relationship criteria are: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." Restatement (Second) of Conflict of Laws section 188(2); *Viacom*, 138 S.W.3d at 725. It is beyond dispute that Missouri is the place of contracting, the AXIS Policy was negotiated in Missouri, Financial Processing is a Missouri resident which conducts its business from Missouri, and the majority of locations insured by the AXIS Policy are located in Missouri. Again, however, because there are no outcome determinative conflicts between the laws of Missouri and any other state with contacts to the AXIS Policy no choice of law analysis is necessary in this case.

Ct. App. 1993). However, the insurer bears the burden of proving the applicability of an exclusion to coverage. *Cnty. of Scotland v. Missouri Public Entity Risk Management Fund*, 537 S.W.3d 358, 363-64 (Mo Ct. App. 2017). "Where there is no duty to defend, there is no duty to indemnify." *Trainwreck West Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 44 (Mo. Ct. App. 2007).

**B.** **TriStar Cannot Prove That The Claims Fall Within The Limited Grant Of Coverage Of The AXIS Policy**

TriStar is unable to meet its burden of proving that the Amazon Warehouse Claims fall within the AXIS Policy's limited grant of coverage because the claims do not arise out of a scheduled location.[2] The AXIS Policy only provides "bodily injury" coverage if the injury: "(a) occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises or (b) [a]rises out of the project or operation shown in the Schedule." TriStar cannot demonstrate that the Amazon Warehouse Claims meet either condition, and AXIS thus does not owe TriStar either a duty to defend or to indemnify any Amazon Warehouse Claims.

It is undisputed that the Amazon Warehouse is not a location scheduled under the AXIS Policy. Coverage otherwise afforded by the AXIS Policy is modified by the "Limitation of Coverage to Designated Premises, Project or Operation Endorsement," which states:

**A.** If this endorsement is attached to Commercial General Liability Coverage Form **CG 00 01**, the provisions under this Paragraph **A.** apply:

1. Paragraph **1.b** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

---

[2] Because TriStar bears the burden of proving the Amazon Warehouse Claims potentially fall within the coverage of the AXIS Policy, on AXIS' motion for summary judgment TriStar bears the burden of showing there is at least a question of fact on this issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (summary judgment is properly granted against a nonmoving party where it "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). AXIS, as the moving party, will satisfy its summary judgment burden by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

> **b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:
>
> **(1)** The "bodily injury" or "property damage":
>
> > **(a)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or
> >
> > **(b)** Arises out of the project or operation shown in the Schedule; …

SUMF at ¶8. Accordingly, the AXIS Policy is expressly limited to bodily injury which occurs or arises out of the premises or projects specifically identified in the policy's "schedule." *Id.*

Neither the AXIS Policy's "Schedule of Locations," Form SI 112, nor any Change Order, include the Amazon Warehouse located at 3077 Gateway Commerce Center Drive South, Edwardsville, Illinois. SUMF at ¶9; ¶18. Initially, the Schedule of Locations is qualified "as respects Location of all premises you own, rent, or occupy…." SUMF at ¶12. It is undisputed that on June 1, 2021, the date the AXIS Policy incepted, neither TriStar nor any other insured owned, rented or occupied the Amazon Warehouse. *Id.* at ¶¶ 42-47. This alone shows that the Amazon Warehouse is not a scheduled location within the meaning of the AXIS Policy.

Moreover, of the 22 scheduled locations identified in the AXIS Policy (in the Schedule of Locations and Policy Change Orders), just one is located in the City of Edwardsville. But that single location is the not the location or address of the Amazon Warehouse.

In its Answer to AXIS' Amended Complaint, TriStar claims that the Amazon Warehouse could be at two possible locations listed on the Schedule of Locations. In its answer to Paragraph 17 of the Amended Complaint, TriStar states, "the Center was located in the general location of Interstate Highways 270/255 and Illinois State Highway 111, N. Interstate 270, and/or E-1255 W. Sand Road in Edwardsville, Illinois/Madison County Illinois." *Id.* at ¶¶48-49. TriStar's answer references Location #16 and Location #17 on the Schedule of Locations; however, it has produced

no evidence to support its apparent position that the Amazon Warehouse is located at either location. The undisputed facts show neither location encompasses or includes the Amazon Warehouse.

Location #16 is expressly described as "Hwy 270/255 & Hwy 111, Madison, IL 62060." *Id.* at ¶9. The affidavit of the underwriter of the AXIS Policy, Rebecca Lipes, and the other evidence shows this location is in the Village of Pontoon, and not in the City of Edwardsville where the Amazon Warehouse is located. *Id.* at ¶10. Moreover, the record clearly demonstrates the property on which the Amazon Warehouse is located has had the address of 3077 Gateway Commerce Center Drive South since its creation in October 2017. *Id.* at ¶¶38-41. Therefore, Location #16 does not contain the Amazon Warehouse.

For a $33 premium, Policy Change Number 1 adds the following location to the Schedule of Locations, "E-1255, W. Sand Rd., N. 1-270, S. Hwy 270-255 + Hwy 111 Edwardsville IL 62025."[3] *Id.* at ¶18. As the record demonstrates, the Amazon Warehouse has never had the address described in Location #17. The property on which the Amazon Warehouse sits was created by Special Warranty Deed No. 2017R33873 on October 6, 2017. *Id.* at ¶¶37-38. The deed identified the address of the newly created lot as 3077 Gateway Commerce Center Drive South, Edwardsville. *Id.* at ¶38. This is the same address TriStar admits is the address of the Amazon Warehouse. *Id.* at ¶29. Furthermore, when the Amazon Warehouse property was created in October 2017, it was owned by Gateway East 9B Owner, LLC which is not a named insured under the AXIS Policy. *Id.* at ¶40. The record further demonstrates that Gateway 9B sold the Amazon Warehouse property on December 16, 2020 to Realty Income Illinois Properties 4 LLC (another

---

[3] Notably, Highway 111 cited in the description is *west* of Interstate 255, while the Amazon Warehouse is to the *east* of Interstate 255. This further reinforces that Location 16 does not contain the Amazon Warehouse.

entity not listed as a named insured under the AXIS Policy). *Id.* at ¶44. The sale occurred months before the inception of the AXIS Policy. *Id.* at ¶1. The record undisputedly demonstrates that the Amazon Warehouse has never been located at the address described in Location #17, that no named insured under the AXIS Policy ever owned the Amazon Warehouse, that no named insured owned the Amazon Warehouse at the inception of the AXIS Policy or on the date of the collapse, and that TriStar did not "own, rent or occupy" Location #17 at any point in time. Based on the unconverted facts in the record, there is no dispute that the Amazon Warehouse is not encompassed by either Locations #16 or #17 and is therefore not covered by the AXIS Policy.

### C.  Four AXIS Policy Exclusions Each Preclude Coverage For The Amazon Warehouse Claims

Even if TriStar could satisfy its summary judgment burden of proving there is at least a question of fact which would prevent the entry of judgment on the insuring agreement of the AXIS Policy, coverage for the Amazon Warehouse claims is precluded, as a matter of law and undisputed fact, *by each*: (1) the Products-Completed Operations Exclusion; (2) the Classification Exclusion; (3) the Designated Professional Services Exclusion; and (4) the Real Estate Development Exclusion.

#### 1.  The Products-Completed Operations Exclusion

The AXIS Policy is subject to the following exclusion: "[t]his insurance does not apply to 'bodily injury' or 'property damage' included within the 'products-completed operations hazard.'" SUMF at ¶14. The policy defines the products-completed operation hazard as "all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work'" except work that has not been completed. SUMF at ¶¶12-13.

The undisputed facts prove that the Amazon Warehouse Claims all are within the "Products-Completed Operations Hazard" and are thus excluded from coverage by the policy's

products-completed operations exclusion. See *Abco Tank & Manuf. Co. v. Federal Ins. Co.*, 550 S.W.2d 193 (Mo. 1977) (*en banc*) (completed operations exclusion is valid and enforceable).

The AXIS Policy's products-completed operations definition lists three alternative times, the earliest of which time TriStar's "work" will be deemed completed. SUMF at ¶12 ("'your work' will be deemed completed the earliest of the following" three events, including "[w]hen all of the work called for in your contract has been completed").

To fall within the completed operations definition and thus the AXIS Policy's exclusion two requirements must be met: (1) the bodily injury occurs away from a premises owned or rented by TriStar, and (2) it must arise out of TriStar's completed work. See *Scottsdale Ins. Co. v. Aqueous Vapor, LLC*, No. 4:20-00328-CV-RK, 2021 WL 123401, at *3-4 (W.D. Mo. Jan. 1, 2021) (finding the claim met both requirements to fall within completed operations). First, it is undisputed that TriStar did not own or rent the Amazon Warehouse at the inception of the AXIS Policy. *Id.* at ¶¶44-47. Second, TriStar's building, construction, or development of the Amazon Warehouse (or supervision thereof) falls within the definition of "your work" because it is "work or operations performed by you or on your behalf." *Id.* at ¶13; ¶¶24-27. That "work" had been completed long before the tornado struck on December 10, 2021. ███████████████████████████

█████████████████████████████████████████████████████████

█████████████████. TriStar also acknowledges Amazon took possession on or around June 30, 2020. *Id.* at ¶42. Thus, TriStar's work on the Amazon warehouse, which it did not own, was completed long before the tornado struck on December 10, 2021, and the Products-Completed Operations Exclusion precludes coverage for the Amazon Warehouse Claims as a matter of law. See *Tonicstar Ltd. v. Lovegreen Turbine Services, Inc.*, 535 F.3d 790, 794-95 (8th Cir. 2008) (summary judgment in favor of the insurer based on the products-completed operations exclusion);

9

*Cincinnati Ins. Co. v. Intek Corp.*, No. 4:08 CV1440, 2010 WL 716197, at *4 (E.D. Mo. Feb. 24, 2010) (same).

### 2.   The Classification Exclusion

TriStar's Answer to AXIS' Amended Complaint intimates that certain locations listed in the AXIS Policy could somehow encompass the Amazon Warehouse within a premises listed on the Schedule of Locations.[4] Yet, despite agreement that the address of the Amazon Warehouse is 3077 Gateway Commerce Center Drive South, ***Edwardsville***, Illinois, even if the Amazon Warehouse was arguably somehow encompassed within #16 or #17, which it is not as explained at pp. 5-7 *supra*, the Classification Limitation Exclusion specifically limits coverage to the classification code designated for each property, SUMF at ¶15, and precludes coverage for "'[b]odily injury', 'property damage' or 'personal or advertising injury' arising of any operations that are not classified or shown on the Declarations of this policy." *Id.* Both Locations #16 and #17 are classified as "Vacant Land." SUMF at ¶¶11; 18. The Madison County property tax record for 2020, the year before the collapse, describes the location of the Amazon Warehouse as "improved commercial." *Id.* at ¶44. There is no conceivable issue of fact as to whether the location on which the massive Amazon Warehouse sits is somehow on "vacant land." Missouri courts have consistently held the term "vacant" as "meaning empty, without inanimate objects, deprived of contents." *Grennemann v. Columbia Ins. Group*, 931 S.W.2d 502, 505 (Mo. Ct. App. 1996) citing *Alcock v. Farmers Mut. Fire Ins. Co.*, 591 S.W.2d 126, 128 (Mo. Ct. App. 1979).

Courts have recognized that a policy's Classification Endorsement "expressly limits coverage to 'those operations described by the classification(s) in the Commercial General Liability Coverage.'" *Brit UW Ltd. v. Hallister Property Development, LLC*, 6 F.Supp.3d 1321,

---

[4] See SUMF at ¶¶48 & 49 (pointing to Location #16 and #17 as possibly encompassing the Amazon Warehouse).

1327 (N.D. Ga. 2014) (applying Georgia law). Following its analysis of relevant policy language and the parties' positions, the court concluded, based on the Classification Endorsement, that "the Policy does not cover the type of activity [the insured] engaged in at the time of the accident." *Id.* at 1328 (granting summary judgment based on the classification endorsement).

Another court found "[t]he Classification Limitation Endorsement plainly limited coverage to those operations specified in the application that are also described under either the 'description' or 'classification' section of the Policy's declarations." *Evanston Ins. Co. v. Heeder*, Case No. 8:11-cv-776-T-24-TGW, 2011 WL 4715177, *2 (M.D. Fla. Oct. 7, 2011). The court found that because the underlying allegations did not arise out of the specified classification, "residential roofing," the insurer had no duty to defend or indemnify the insured and thus entered summary judgment in favor of the insurer. *Id.* at *3.

The Classification Limitation Exclusion limits coverage to the use of those Locations #16 and #17 as "vacant land." The Amazon Warehouse Claims all arise from the use of developed and improved land, and thus are excluded from coverage under the AXIS Policy as a matter of law.

### 3.  **The Professional Services Exclusion**

The Professional Services Exclusion also precludes coverage for the Amazon Warehouse Claims. The exclusion language states, "[t]his insurance does not apply to 'bodily injury'…due to the rendering of or failure to render any professional service." SUMF at ¶17. The Schedule, which is part of and appears on the exclusion itself, in turn describes the excluded professional services, "[a]ll Professional Services Provided by the Insured." *Id.* The exclusion applies even if TriStar negligently supervised, hired, employed, trained, or monitored another's rendition of professional services. *Id.*

Courts applying Missouri law enforce professional services exclusions. In *American Economy Ins. Co.*, the Eighth Circuit found that a professional services exclusion barred coverage for the insured's operation of a nursing home. *American Economy Ins. Co. v. Jackson*, 476 F.3d 620, 623-26 (8th Cir. 2007). The court rejected the insured's argument the term "professional services" was ambiguous. *Id.* at 624 (finding the term unambiguous and applying its plain meaning). A "professional act or service" involves "specialized knowledge, labor or skill, and the labor or skill involved is predominantly mental or intellectual rather than physical or mental." *Id.* at 625. The Eighth Circuit concluded that in considering its residents' medical conditions in its decision making, the insured exercised professional services within the meaning of the exclusion and affirmed the grant of summary judgment in favor of the insurer. *Id.* at 625-26.

Here, the underlying claims seek to hold TriStar liable for the development, design, and construction of the Amazon Warehouse, undoubtedly a "professional service." The *McEwen*, *January* and *Hickman* Complaints allege TriStar built, constructed or developed the Amazon Warehouse. SUMF at ¶24-26. The record demonstrates TriStar entered into a detailed Development Management Agreement with the then owner of the site related to the Amazon Warehouse. SUMF at ¶¶31-36. The Agreement required TriStar to coordinate with architects, contractors, sales, marketing, lenders, and all governmental authorities. *Id.* at ¶35. These activities all involved "specialized knowledge, labor, or skill" which is predominantly mental or intellectual (*Jackson*, 476 F.3d at 625), and, therefore, its activities in connection with the Amazon Warehouse upon which the Amazon Warehouse Claims are based are excluded from coverage. *See also National Union Fire Ins. Co. of Pittsburgh, Pa. v. Structural Systems Technology*, 756 F.Supp. 1232, 1238 (E.D. Mo. 1991) (finding claims for negligent design, supervision, inspection or engineering services related to a radio tower were excluded in a professional services exclusion).

12

This is so even if TriStar did not directly conduct some or all of these activities (e.g., it subcontracted this performance to others), because the exclusion still applies if TriStar supervised, hired, employed, trained, or monitored others who engaged in "professional services." SUMF at ¶17. The Amazon Warehouse Claims are excluded by the Professional Services Exclusion as a matter of law.

### 4.   The Real Estate Development Activities Exclusion

The Real Estate Development Activities Exclusion also precludes the Amazon Warehouse Claims. It provides:

> This insurance does not apply to:
>
> "Bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of, resulting from, related to, or in any way connected to "real estate development activities" by or on behalf of any "insured."

SUMF at ¶16. The exclusion defines "real estate activities" as "the design, site preparation, construction, marketing, or sales of any real estate owned by any 'insured', including wrecking or demolition or any building or structure…." *Id.* The undisputed facts establish TriStar's activities at the Amazon Warehouse arise out of its "real estate development activities" under the "Development Management Agreement." *Id.* at ¶¶31-36. The *McEwen*, *Hickman*, and *January* Complaints all allege TriStar was under contract to build, develop, and/or construct the Amazon Warehouse and had a duty to exercise reasonable care in its development, building, and construction. *Id.* at ¶¶24-27.

The United States District Court for the Eastern District of Pennsylvania addressed a substantively similar exclusion in *Northridge Village LP v. Travelers Indemnity Co. of Connecticut*, No. 15-1947, 2017 WL 3776621 (E.D. Pa. Aug. 31, 2017). A study commissioned by the homeowner's association identified "delinquencies, defects, [and] deficiencies" in the

common facilities designed and constructed by the insured. *Id.* at *1. The Community Association filed suit against the insured alleging responsibility for the planning, design, development, creation, and construction of the community. *Id.* at *2. It further alleged negligence "with the building and construction of the Community." *Id.*

The district court granted summary judgment in favor of the insurer. Like the AXIS Policy, the insurance policy at issue in *Northridge* was subject to a Real Estate Development Activities exclusion which excluded coverage for "bodily injury" that "arises out of any 'real estate development activities' by or on behalf of any insured." *Id.* at *12. The underlying plaintiff alleged the insured was "responsible for the planning, design, development, creation and construction of the Community" and the court found these activities constituted "real estate development activities" under the definition. *Id.* at *13. Because the underlying complaint alleged "property damage" arising out of Northridge Village's "real estate development activities," the exclusion applied and the court found insurer had no duty to defend. *Id.*

The undisputed record proves that all complaints and claims allege the injuries arose out of TriStar's "real estate development activities" of developing, building, and constructing the Amazon Warehouse. SUMF at ¶¶21-26. The Amazon Warehouse Claims thus fall within the Real Estate Development Exclusion and are thus precluded as a matter of law.

## CONCLUSION

For the foregoing reasons, AXIS respectfully requests that this Court enter summary judgment in its favor and against TriStar on Count I of AXIS' Amended Complaint for Declaratory Judgment and on Counts I and II of TriStar's Amended Counterclaim.

Respectfully submitted,

**SKARZYNSKI MARICK & BLACK LLP**

By: */s/ Michael M. Marick*

14

Attorney for Plaintiff, AXIS Surplus Insurance Company
Michael M. Marick
Andrew J. Candela
Skarzynski Marick & Black LLP
353 N. Clark Street, Suite 3650
Chicago, IL 60654
(312) 946-4200
mmarick@skarzynski.com
acandela@skarzynski.com

and

**WATTERS WOLF BUB HANSMANN**

By: */s/ Russell F. Watters*
Attorney for Plaintiff, AXIS Surplus Insurance
Company
Russell F. Watters
Watters Wolf Bub Hansmann
600 Kellwood Parkway
Suite #120
St. Louis, MO 63017
(636) 798-0570
Rwatters@wwbhlaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 31, 2022, the foregoing was served via the

Court's CM/ECF system on all counsel of record and via email.

*/s/ Michael M. Marick*

15