IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| AXIS SURPLUS INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiff/Counter-Defendant, | ) ) | |
| v. | ) | Case No. 4:22-cv-00328-AGF |
| | ) | |
| TRISTAR COMPANIES, LLC, | ) ) | |
| Defendant/Counter-Plaintiff. | ) ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the cross motions for summary judgment filed by Plaintiff/Counter-Defendant Axis Surplus Insurance Company ("Axis") and Defendant/Counter-Plaintiff TriStar Companies, LLC ("TriStar") and Axis's motion to vacate the trial date.  Axis seeks summary judgment on Count I of its Amended Complaint for declaratory relief (Doc. No. 19) and Count I and II of TriStar's Amended Counterclaim.  (Doc. No. 26).  In sum, Axis seeks a declaratory judgment that pending and future personal injury and wrongful death claims ("Underlying Claims") against TriStar related to the destruction of an Amazon warehouse by a tornado in Evansville, Illinois on December 10, 2021, are not covered by the insurance policy issued by Axis. (Doc. No. 38).

TriStar seeks summary judgment on Count I of its Amended Counterclaim (Doc. No. 26) and Count I of Axis's Amended Complaint.[1]  (Doc. No. 35).  TriStar contends that the Underlying Claims are covered by the insurance policy, and seeks a declaratory judgment that Axis has a duty to indemnify, or in the very least, a duty to defend TriStar with respect to the Underlying Claims.

For the reasons set forth below, the Court will grant Axis's motion for summary judgment and deny TriStar's motion for summary judgment.  The accompanying motions to seal will be granted.

## BACKGROUND

For purposes of the motions before the Court, the record establishes the following.

TriStar is an industrial and multifamily real estate developer that was involved in overseeing the development and construction of an Amazon warehouse located at 3077 Gateway Commerce Center Drive South, Edwardsville, Illinois (the "Warehouse").  Amazon took possession on approximately June 30, 2020 and TriStar's involvement with the warehouse ceased in November 2020.  TriStar did not own or rent the Warehouse on June 1, 2021, the date of the Axis Policy.

On December 10, 2021, a tornado struck the Amazon Warehouse resulting in the death and injury of numerous workers therein.  A number of wrongful death and personal injury lawsuits have since been filed against TriStar, claiming, in relevant part, that

---

[1]     Axis concedes that Count II of its Amended Complaint regarding "other insurance" is only brought in the alternative and in the event the Court determines there is no coverage under the Policy, Count II is moot.

TriStar was negligent in its development and construction of the Warehouse.[2]  At the time of the incident, TriStar carried commercial general liability insurance under a policy issued by Axis (the "Policy").  The Policy was effective June 1, 2021 to June 1, 2022.  TriStar provided notice to Axis of the Underlying Claims and demanded coverage under the policy.  Axis denied coverage and filed the instant action.

The policy contains the following relevant provisions:

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

    **1. Insuring Agreement**

        **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

Doc. No. 19-4 at 16.

The parties agree that Paragraph 1.b under Section 1 – Coverage A – Bodily Injury and Property Damage Liability is replaced by the "Limitation of Coverage to Designated Premises, Project or Operation" endorsement, and the following language is the operative provision:

---

[2]     *McEwen v. Amazon.com et al.,* Cause No. 2022LA000055; *January v. Amazon.com et al.,* Cause No. 2022-LA-0051; *Hickman v. Amazon.com et al.,* Cause No. 2022-LA-00510.  These lawsuits have been filed in the Circuit Court of Madison County, Illinois. TriStar has also been notified of two additional potential lawsuits involving the wrongful deaths of Clayton Cope and Larry Virden.

**SECTION I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

  * * *

  **b.**  This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

    **(1)**  The "bodily injury" or "property damage":

      (a)  Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

      (b)  Arises out of the project or operation shown in the Schedule

  * * *

Doc. No. 19-4 at 64.  The Policy includes a Schedule that lists eighteen locations, some of which are listed as specific street addresses, others are listed as geographical areas.  *Id.* at 34-35.  The Policy Declaration page (*id.* at 10) and the Schedule refer to the locations as "all premises you own, rent or occupy."

 The relevant terms are defined as follows:

**SECTION V – DEFINITIONS**

* * *

**3.**  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.**  "Coverage territory" means:
  a.  The United States of America (including its territories and possessions), Puerto Rico and Canada;

 * * *

- 4 -

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Doc. No. 19-4 at 28, 30.

The policy also contains a number of exclusions, which Axis claims preclude coverage for the Underlying Claims, including: (1) the Products-Completed Operations Exclusion; (2) the Classification Exclusion; and (3) the Designated Professional Services Exclusion.[3]

For the purpose of these motions, there is no dispute that TriStar was a named insured under the Policy and that the Policy was effective on the date of the incident.  The dispute centers on whether the Warehouse is a "location" covered by the policy, and if so, whether any of the designated exclusions apply.

## ARGUMENTS OF THE PARTIES

### Coverage

Axis argues that the claims are not covered by the policy because the location of the incident, the Amazon Warehouse, is not covered by the Policy.  Specifically, Axis contends that the Policy is expressly limited to bodily injury which occurs or arises out of the premises or projects specifically identified in the Policy's "Schedule of Locations." Doc. No. 19-4 at 64.

Axis argues that the Amazon Warehouse is not within the Schedule of Locations for two reasons.  First, the Schedule of Locations qualifies the Locations as "Location of

---

[3]    The relevant will language of each exclusion will be discussed as it applies to the parties' arguments.

all premises you own, rent, or occupy" (*Id.* at 34) and since it is undisputed that TriStar did not own, rent, or occupy the Amazon warehouse at the time of the Policy's inception or at the time of the incident, it is not covered under the policy.  Second, regardless of whether TriStar owns, rents, or occupies it, the Amazon Warehouse's specific address (3077 Gateway Commerce Center Drive South, Edwardsville, Illinois) is not listed in the Schedule of Locations, nor is the Warehouse encompassed by any of the Schedule Locations.

TriStar contends that the Underlying Claims are covered by the Policy, because they are covered by the general policy,[4] and the Policy as modified by the Limitation to Designated Premises, Project or Operations Endorsement (the "Endorsement"), because the Amazon Warehouse is encompassed by the Schedule of Locations.  TriStar first argues that the Endorsement is the controlling section, not the language in the Schedule of Locations, and the Endorsement does not include any qualifying language for the Locations about owning, renting, or buying.  Even so, TriStar argues that Axis's contention that the covered locations are limited to only locations owned, rented, or occupied by the named insured is patently absurd given that some of the locations listed in the Schedule of Locations are entire streets, and in one instance, the entire city of St. Charles, Missouri.  TriStar argues that Axis cannot reasonably contend that the parties to

---

[4]     Axis does not dispute that TriStar would theoretically have coverage under the Policy's general liability coverage (Doc. No. 19-4 at 16), but the parties agree that this provision is modified by the "Limitation of Designated Premises, Project or Operation" Endorsement.

the policy thought TriStar or any other insured owned, rented, or occupied the entire city of St. Charles.  Thus, that provision does not apply.

TriStar contends that the correct and reasonable interpretation of the Policy is that the some of the Schedule Locations are simply meant to describe areas that contain covered locations, such as the Amazon Warehouse.  TriStar further contends that the Amazon Warehouse in encompassed by Location No. 16 (Hwy 270/255 & Hwy 111, Madison, IL 62060) and Location No. 17 (E-1255, W. SAND RD., N. 1-270, S. Hwy 270-255 + Hwy 111, EDWARDSVILLE IL 62025).  *Id.* at 34, 81.

**Exclusions**

In the event the Court determines that there is coverage under the Policy, Axis argues that three exclusions preclude coverage for the Underlying Claims.[5]  TriStar argues that these exclusions do not apply.

Products-Completed Operations Exclusion

The Products-Completed Operations Exclusion precludes coverage for claims involving bodily injury and property damage "occurring away from premises [insured] own[s] or rent[s] and arising out of '[insured's] product' or '[insured's] work'" if the work is deemed completed.  (Doc. No. 19-4 at 30, 64).  Axis argues that this exception applies because it is uncontested that TriStar did not own or rent the Amazon Warehouse,

---

[5]     Axis initially argued in its summary judgment motion that the Real Estate Development Exclusion applies, and this precludes the underlying claims from coverage. However, the Real Estate Development Exclusion only applies to premises "owned" by an insured.  As TriStar has admitted that it did not own the Amazon Warehouse, Axis has conceded that this exclusion does not apply.

thus the claim arose "away" from a premise it owned/rented, and it is undisputed that TriStar's work was completed prior to the incident.

TriStar acknowledges that it did not own or rent the premises and that its involvement with Amazon Warehouse ceased in 2020. However, TriStar argues that "transportation of property" exception to the exclusion applies. The "transportation of property" exception states, in relevant part, that the exclusion does not include bodily injury or property damage claims "arising out of…the transportation of property." (*Id.* at 30). TriStar argues that the Underlying Claims arise out of the transportation of property because the bodily injuries at issue were all suffered by Amazon delivery drivers who were working at an Amazon "delivery station." (Doc. No. 50-1) (citing Doc. No. 19-1, *McEwen Complaint*, at ¶¶ 1, 2). TriStar contends that this exempts the Underlying Claims from the Products-Completed Operations Hazard Exclusion, or in the very least, gives rise to the possibility of coverage.

Classification Exclusion

Axis argues that in the event the Amazon Warehouse were to be construed as being encompassed by either Location #16 or Location #17, the Classification Exclusion would preclude coverage. The Classification Exclusion precludes coverage for claims "arising out of any operations that are not classified or shown on the Declarations of [the] policy." (*Id.* at 79). Axis contends that both Location No. 16 and Location No. 17 are classified as "vacant land," thus coverage is limited to the use of those Locations as vacant land. Axis further contends that the presence of a warehouse conclusively demonstrates that the Location was not "vacant land," but was in fact "developed" or

"improved land," thus the Underlying Claims arise out of an operation that is not classified or shown in the Policy.

TriStar argues that Axis has procedurally waived the Classification Exclusion as a defense because it was not explicitly raised in Axis's answer, but in any event the exclusion is inapplicable to this case.  TriStar contends that nothing in the Policy explicitly classifies Location No. 16 as "vacant land" and Axis improperly relies on parol evidence to establish that Location No. 16 is classified as "vacant land."

Professional Services Exclusion

Axis also argues that the Professional Services Exclusion precludes coverage of the Underlying Claims.  The Professional Services Exclusion states, in pertinent part, "[t]his insurance does not apply to 'bodily injury'… due to the rendering of or failure to render any professional service."  (*Id.* at 61).  The exclusion also applies if it is alleged that TriStar negligently supervised, hired, employed, trained, or monitored another's rendering or failed to render any professional services.  (*See id.*).  Axis contends that the Underlying Claims seek to hold TriStar liable for its role in the development, design, and construction of the Amazon Warehouse.  Axis argues that this is undoubtedly a "professional service," thus coverage is precluded.

TriStar argues that Axis has procedurally waived the Professional Services Exclusion because it failed to explicitly raise this exclusion in its Answer, but in any event the exclusion is inapplicable to this case.  TriStar argues that its role in the development, design, and construction of the Amazon Warehouse was not a "professional service," as legally defined, nor was it "supervising" the rendering of professional

services because, per its third-party development agreement, it was only "cooperating and coordinating" with the third parties that were designing and constructing the Warehouse.

## LEGAL STANDARDS

### Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[T]he burden of demonstrating there are no genuine issues of material fact rests on the moving party, and we review the evidence and the inferences which reasonably may be drawn from the evidence in the light most favorable to the nonmoving party." *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015) (citation omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).

### Contract Interpretation

 "Interpretation of an insurance policy is a matter of state law." *Progressive N. Ins. Co. v. McDonough*, 608 F.3d 388, 390 (8th Cir. 2010) (citation omitted).  Policy terms are given the meaning that an ordinary person of average understanding would attach when purchasing insurance.  *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 763 (8th Cir. 2020).  "If the policy language is clear and unambiguous, it must be construed as written.  An ambiguity exists only if a phrase is reasonably open to different constructions." *Doe Run Res. Corp. v. Am. Guarantee & Liab. Ins.,* 531 S.W.3d 508, 511

(Mo. 2017) (citations omitted).  "Any ambiguity is resolved in favor of the insured." *Owners Ins. Co. v. Craig*, 514 S.W.3d 614, 617 (Mo. 2017) (citation omitted).

Under Missouri law, the insured has the burden of proving coverage, and the insurer has the burden of proving that an exclusion applies.  *Am. Family Mut. Ins. Co. v. Co Fat Le*, 439 F.3d 436, 439 (8th Cir. 2006).

### Duty to Defend and Duty to Indemnify

The duty to defend and the duty to indemnify are separate and distinct.  *Piatt v. Indiana Lumbermen's Mut. Ins. Co.*, 461 S.W.3d 788, 792 (Mo. 2015).  An insurer's duty to defend is broader than its duty to indemnify and arises from the possibility or potential for coverage as the facts appear at the outset of the case.  *Id.*  It is "determined by comparing the language of the insurance policy with the allegations in the complaint." *Interstate Bakeries Corp. v. OneBeacon Ins. Co.*, 686 F.3d 539, 542 (8th Cir. 2012).  The duty to defend arises as long as some claim in the complaint has a possibility of being covered, even if claims beyond coverage may also be present.  *The Renco Grp., Inc. v. Certain Underwriters at Lloyd's, London*, 362 S.W.3d 472, 480 (Mo. App. E.D. 2012). Nevertheless, "use of the word 'potentially' [within coverage] does not render boundless the duty to defend."  *Interstate Bakeries*, 686 F.3d at 544.  An insurer does not have a duty to defend a suit where the petition "upon its face alleges a state of facts which fail to bring the case within the coverage of the policy."  *Century Surety Co. v. Euro, Inc.*, No. 4:12-CV-1320-CEJ, 2013 WL 2292043, at *3 (E.D. Mo. May 24, 2013) (quoting *Trainwreck West Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 42 (Mo. App. E.D. 2007)).

Conversely, the duty to indemnify is determined by the facts as they are established at trial or otherwise finally determined through summary judgment or settlement. *Truck Ins. Exch. v. Prairie Framing, LLC*, 162 S.W.3d 64, 92 (Mo. App. W.D. 2005). However, if a court determines that there is no duty to defend, then there is no duty to indemnify even if the underlying facts of the original case still have not been determined. *Superior Equip. Co. v. Maryland Cas. Co.*, 986 S.W.2d 477, 484-85 (Mo. App. E.D. 1998).

<u>**DISCUSSION**</u>

**<u>Policy Coverage</u>**

As previously discussed, the parties agree that Paragraph 1.b under Section 1 – Coverage A – Bodily Injury and Property Damage Liability is modified by the Limitation of Coverage to Designated Premises, Project or Operation Endorsement. The following language is the operative provision:

**SECTION I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

* * *

**b.** This insurance applied to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

**(1)** The "bodily injury" or "property damage":

(a) Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

> (b)     Arises out of the project or operation shown in
>          the Schedule.

Doc. No. 19-4 at 64.

Here, the parties' only dispute as to this section is whether the bodily injury "occurred on the premises shown in the Schedule." Axis contends that the Schedule of Locations is limited to premises owned, rented or occupied by a named insured, and since there is no dispute that TriStar did not own, rent, or occupy the Amazon Warehouse or its land, it therefore cannot be contained in the Schedule. TriStar argues that the owns/rents/occupy language is not controlling, and coverage exists for any premise shown on the schedule, regardless of TriStar's presence at that location.

TriStar acknowledges that the specific street address for the Amazon Warehouse, 3077 Gateway Commerce Center Drive South, Edwardsville, Illinois, is not listed in the Schedule of Locations. But, TriStar contends the Warehouse is nonetheless covered because Location No. 16 and/or Location No. 17 encompass the specific location of Amazon Warehouse.

"Own, Rent, or Occupy"

When read in isolation, the "Limitation of Coverage to Designated Premises, Project or Operation" Endorsement does not specifically state that the coverage is limited to premises owned, rented, or occupied by insured. The language with respect to the "premises" in this Endorsement States:

**Premises**: Refer to Form SI112 for All locations

\* \* \*

(1) The "bodily injury" …

      (a) Occurs on the premises shown in the Schedule….

Doc. No. 19-4 at 64.

It is well settled that a court "should not interpret policy provisions in isolation but rather evaluate policies as a whole." *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. 2009).  Here, the endorsement incorporates other provisions of the policy by reference.  Form SI112 is the "Schedule of Locations" which states in relevant part:

### SCHEDULE OF LOCATIONS

* * *

The policy Declarations page is amended as respects Location of all premises you own, rent or occupy to include the following:

      * * *

      16. Hwy 270/255 & Hwy 111, Madison, IL 62060

      * * *

Doc. No. 19-4 at 34.

TriStar contends that the Schedule of Locations only amends the Declarations and has no effect on the "Limitation of Coverage to Designated Premises, Project or Operation" Endorsement because the Schedule of Locations states, "The policy Declarations page is amended as respects Location of all premises you own, rent or occupy to include the following[.]"  However, a plain reading of the Policy dispels this argument.  Endorsements and language in the body of the policy that seem inconsistent "should be construed together unless they are in such conflict they cannot be reconciled."

*Shelter Mut. Ins. Co. v. Sage*, 273 S.W.3d 33, 37 (Mo. Ct. App. 2008).  There is no such conflict here; the Limitation of Coverage Endorsement specifically refers to the Schedule of Locations when referring to "premises."  The Schedule of Locations qualifies the premises as those owned, rented, or occupied by a named insured.

TriStar argues that such an interpretation would be "absurd" and "unreasonable" because the Schedule of Locations contains a variety of locations such as entire streets (Location No. 8, Highway T, Franklin County, Union, MO 63804) and an entire city (Location No. 12, St. Charles, MO).  *See* Doc. No. 19-4 at 34.

"A construction which attributes a reasonable meaning to all the provisions of [an] agreement is preferred to one which leaves some of the provisions without function or sense." *Brazil v. Auto Owners Insurance Company*, 3 F.4th 1040, 1042 (8th Cir. 2021) (quoting *Ringstreet Northcrest, Inc. v. Bisanz*, 890 S.W.2d 713, 718 (Mo. Ct. App. 1995)); *Dibben v. Shelter Ins. Co.,* 261 S.W.3d 553, 556 (Mo. Ct. App. 2008) (explaining that when interpreting an insurance contract, the court must "endeavor to give each provision a reasonable meaning and to avoid an interpretation that renders some provisions useless or redundant.").  A reasonable interpretation of the Policy would provide coverage for all premises owned, rented, or occupied by TriStar within or at any of the listed locations in the Schedule.  Therefore, because there is no dispute that Tristar did not own, rent, or occupy the Amazon Warehouse at any point during the policy period, it is not included in the Schedule of Locations, and thus there is no coverage under the policy.

Location of the Amazon Warehouse

Even if the Court were to disregard the "own, rent, or occupy" language, neither Location No. 16 nor Location No. 17 can reasonably be construed to include the Amazon Warehouse. Location No. 16 is listed on the Schedule as "Hwy 270/255 & Hwy 111, Madison, IL 62060."[6] Doc. No. 19-4 at 34. The Amazon Warehouse is not geographically encompassed by this location; the Warehouse is east of Hwy 255 and Hwy 111 and north of Hwy 270.

Location No. 17 was added by an endorsement on July 25, 2021. *Id.* at 81. Location No. 17 is listed as "E-1255, W. SAND RD., N-1-270, S. Hwy 270-255 + Hwy 111 EDWARDSVILLE, IL 62025." *Id.* This location, as described, does not provide definitive geographical boundaries for which we can determine what areas Location No. 17 actually covers. However, any ambiguity is resolved in the Policy. The Location No. 17 endorsement also states the following: "The following Class Code is added to Location #17: Class Code: 49451 – Vacant Land – Other than Not-For-Profit, Exposure: 26 Units." *Id.* There is no dispute that the Amazon Warehouse was occupied, developed land, with a definitive street address, at the inception of the Policy. Therefore, it is unreasonable to construe the Amazon Warehouse as being contained within vacant land,

---

[6]    Although not raised by either party, the Court notes that the Policy contains an endorsement, effective July 1, 2021, which states: "The Exposure for Location #16 – Long Meadows Rd, Pacific, MO 63069 has been amended to read as follows: Class Code: 49451 – Vacant Land – Other than Not-For-Profit, Exposure: 25 units." Doc. No. 19-4 at 85. This is an entirely different address than listed in the Schedule, but even so, the Amazon Warehouse is not encompassed by this location either, as this location is in the state of Missouri.

with an exposure of 26 units.

Further, TriStar completed all its work related to the Amazon Warehouse in November 2020, at which time it had a readily available and conspicuous street address. The Policy was not entered into until June 2021, at which time the Amazon Warehouse address was decidedly omitted from the Schedule of Locations, which contains generalized locations (i.e. St. Charles, MO) and specific premises within such locations (i.e. 920 S Main St, Saint Charles, MO).  *See* Doc. No. 19-4 at 34.

In any event, because the Amazon Warehouse is neither explicitly nor implicitly contained within the Schedule of Locations, the Court finds that Axis is entitled to judgment, as the Underlying Claims related to the Amazon Warehouse are not covered by the Policy.

**Products-Completed Operations Hazard Exclusion**

Although the Court has determined that there is no coverage under the Policy, Axis has met its burden to establish that the Products-Completed Operations Hazard Exclusion ("Products-Completed Exclusion") also precludes coverage of the Underlying Claims.  The Products-Completed Exclusion states, "[t]his insurance does not apply to 'bodily injury' or 'property damage' included within the 'products-completed operations hazard.'"  Doc. No. 19-4 at 59.  The "products-completed operations hazard" states in relevant part:

**SECTION V – DEFINITIONS**

* * *

**16. "Products-completed operations hazard":**

- 17 -

     **a.**  Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

          \* \* \*

          **(2)** Work that has not yet been completed or abandoned.

          \* \* \*

     **b.**  Does not include "bodily injury" or "property damage" arising out of:

          **(1)** The transportation of property…

*Id.* at 30.

Thus, there is no coverage under the Policy if the bodily injury occurred away from a premise owned or rented by TriStar and the bodily injury arose out of TriStar's completed work, unless that bodily injury arose out of the transportation of property.  The parties agree that TriStar neither owned nor rented the Amazon Warehouse, thus the bodily injury occurred *away* from any premise owned or rented by TriStar.  The parties also agree that TriStar's work at the Amazon Warehouse was complete as of November 2020, over a year prior to the incident.  Thus, on these bases, the Products-Completed Exclusion would preclude coverage.  However, TriStar contends that the Products-Completed Exclusion does not apply because the "transportation of property" exception applies to the Underlying Claims.

<u>Transportation of Property Exception</u>

The transportation of property exception applies to "'bodily injury' arising out of [t]he transportation of property…."  TriStar contends that the injuries suffered at the Amazon Warehouse on December 10, 2021, arose out of the transportation of property because the claimants were Amazon delivery drivers, and the Warehouse was an Amazon "delivery station" that existed for the purpose of transportation of property.  *See* Doc. No. 50-1, at 11.  This argument is without merit.

"Under Missouri law, the phrase 'arising out of' requires something less than proximate cause but something more than a simple "but-for…temporal and spatial relationship.'"  *Great Am. All. Ins. Co. v. Windermere Baptist Conf. Ctr., Inc.*, 931 F.3d 771, 773 (8th Cir. 2019) (citing *Walden v. Smith*, 427 S.W.3d 269, 283 (Mo. Ct. App. 2014); *see also Capitol Indem. Corp. v. 1405 Assocs., Inc*, 340 F.3d 547, 550 (8th Cir. 2003) (explaining that "arising out of" under Missouri insurance law means "originating from," "having its origin in," "growing out of" or "flowing from.") (citation omitted).  In *Patel v. LM General Ins. Co.*, the Eighth Circuit determined that injuries sustained in a drive-by shooting did not "arise out of" the use of a vehicle because the shooting was not "directly and necessarily incident to the operation and use" of the vehicle.  922 F.3d 875, 879 (8th Cir. 2019).

The personal injuries and wrongful deaths suffered at the Amazon Warehouse on December 10, 2021, arose out of a category 3 tornado striking the Amazon Warehouse and the alleged faulty design and construction of that warehouse.  It did not, as TriStar contends, arise out of the transportation of property.  The victims' job titles and the

operations within the warehouse are irrelevant and, at best, tangential to their injuries. Thus, the transportation of property exemption does not apply, and the Underlying Claims are precluded under the Products-Completed Exclusion.

## <u>CONCLUSION</u>

In sum, there is no coverage under the Policy for the Underlying Claims because the Amazon Warehouse is not specifically identified in, nor encompassed by any of the Locations within the Schedule, and even if it were, the Underlying Claims would be precluded by the Products-Completed Exclusion.  The Court need not determine whether the other exclusions apply.  Thus, Axis does not have a duty to defend nor a duty to indemnify TriStar with respect to the Underlying Claims.

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Plaintiff/Counter-Defendant Axis Surplus Insurance Company's motion for summary judgment is **GRANTED**.  Doc. No. 38

**IT IS FURTHER ORDERED** that Defendant/Counter-Plaintiff TriStar Companies, LLC's motion for summary judgment is **DENIED**.  Doc. No. 35.

**IT IS FURTHER ORDERED** that Plaintiff/Counter-Defendant Axis Surplus Insurance Company's motion to vacate the trial date is **DENIED as moot**.  Doc. No. 62.

The Court will address the pending motions to seal in a separate order once the filings are complete.  All claims against all parties having been resolved, a separate Judgment shall accompany this Memorandum and Order.

_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 10th day of February, 2023.